MARK M. SHARF, ESQ. (SBN 140390)
SHARF LAW FIRM
15821 Ventura Blvd, Suite 275
Encino, CA 91436
Telephone: (818) 788-4800
Facsimile: (818) 905-6100

Attorneys for William S. Patrick

FILED

JUL 18 2007

CLERK U.S. BANKRUPTCY COURT
CENTRAL DISTRICT OF CALIFORNIA
BY _____ Deputy

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

In Re

WILLIAM S. PATRICK,

Debtor

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

BK No. 1:07-bk-10312GM

Chapter 7

**DEBTOR'S OPPOSITION TO
MOTION OBJECTING TO
DEBTOR'S CLAIM OF
EXEMPTION; DECLARATIONS OF
DENISE WILSON AND WILLIAM S.
PATRICK**

Date: August 1, 2007
Time: 1:30 p.m.
Ctrm: 303

        William S. Patrick has, concurrently herewith, amended Schedule C to

exempt his IRA under §522(b)(3)(C), as well as California law, as authorized by §522(b) in

"opt-out" states.   §522(b)(3)(C) completely exempts retirement funds to the extent those

funds are in a fund or account that is exempt from taxation under section 408 and 408A of

the Internal Revenue Code of 1986. As evidenced by the IRA document attached as Exhibit

A and the Declaration of Denise Wilson, the Compliance Officer of Fiserv Trust Company,

member FDIC, these IRA amounts are fully exempt.

///

///

I.

## IRA ACCOUNTS ARE FULLY EXEMPT

The Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("2005 Amendments") added a new exemption to Code § 522, exempting retirement funds to the extent those funds are in a fund or account that is exempt from taxation under section 401, 403, 408, 408A, 414, 457, or 501(a) of the Internal Revenue Code of 1986. 11 U.S.C.A. § 522(d)(12) and §522(b)(3)(C) (applicable in opt-out states).

IRAs and Roth IRAs are covered by §§408 and 408A of the Internal Revenue Code. §522(b)(4) of the Bankruptcy Code now provides that a retirement fund is defined as exempt within the meaning of this exemption if: (a) there is a current IRS determination that it is exempt, or (b) neither the IRS nor a court has made a determination that it is not exempt and (i) it is in substantial compliance with the applicable requirements of the Internal Revenue Code, or (ii) it fails to be in substantial compliance but the debtor is not materially responsible for the failure.

The 2005 Amendments not only added the new exemption to the federal exemptions available under Code § 522(d)(12), but also made the new exemption applicable to state law exemptions even if the state has opted out of the federal scheme. 11 U.S.C.A. § 522(b)(1, 2 and 3).

II.

## WILLIAM PATRICK'S IRA IS EXEMPT

Denise Wilson is the Compliance Officer of Fiserv Trust Company, member FDIC. Her attached declaration affirmatively establishes that:

"The IRA Plan document associated with Mr. Patrick's IRA account is identical to the Internal Revenue Service's model IRA plan document which is IRS Form 5305.

3.    Neither the Internal Revenue Service nor a court has ever made a determination that the IRA account in which William Patrick's funds are kept

1  is not exempt.  Furthermore, Mr. Patrick's IRA itself is in substantial
2  compliance with the applicable requirements of the Internal Revenue Code."
3     This alone satisfies the requirements of 11 U.S.C. §522(b)(4) and establishes
4  that these funds are exempt.
5     In addition, William Patrick has testified that the large sum in his IRA account
6  is simply the product of small incremental deposits of $1500 per year, then $2000 per year,
7  and finally $3500 per year made over the past three decades, combined with compound
8  interest rates which have at times been in excess of 15% per year.
9     Wherefore William S. Patrick hereby prays that the Motion Objecting to his
10  IRA exemption be denied.
11
12  DATED: July 17, 2007   Sharf Law Firm
13
14
15          Mark M. Sharf, Esq., Counsel for
        William S. Patrick
16
17
18
19
20
21
22
23
24
25
26
27
28

## DECLARATION OF DENISE WILSON

I, Denise Wilson, do hereby declare:

    1. I am the Compliance Officer for Fiserv Trust Company, member FDIC (hereinafter "Fiserv"). I have worked for Fiserv for the past seven (7) years. The facts stated herein are from my own personal knowledge, or I have gained knowledge of them from the business records of Fiserv, which were made at or about the time of the events recorded, and which are maintained in the ordinary course of Fiserv's business at or near the time of the acts, conditions or events to which they relate. Any such document was prepared in the ordinary course of business of Fiserv by a person who had personal knowledge of the event being recorded and had a business duty to record accurately such event. I am one of the custodians of the books, records and files of Fiserv, and I am familiar with the records that relate to William Patrick. If called as a witness I could and would competently testify to the facts stated herein.

    2. The records of Fiserv indicate that William S. Patrick, with a Social Security number ending in 8111 and living at 10543 Lubao Avenue, Chatsworth, California is the owner of a traditional IRA account at First Private Bank & Trust. The IRA Plan document associated with Mr. Patrick's IRA account is identical to the Internal Revenue Service's model IRA plan document which is IRS Form 5305.

    3. Neither the Internal Revenue Service nor a court has ever made a determination that the IRA account in which William Patrick's funds are kept is not exempt. Furthermore, Mr. Patrick's IRA itself is in substantial compliance with the applicable requirements of the Internal Revenue Code.

    I declare under penalty of perjury that the foregoing is true and correct and that this declaration was executed this 17th day of July, 2007 at Denver, Colorado.

Denise Wilson

## DECLARATION OF DENISE WILSON

I, Denise Wilson, do hereby declare:

1. I am the Compliance Officer for Fiserv Trust Company, member FDIC (hereinafter "Fiserv"). I have worked for Fiserv for the past seven (7) years. The facts stated herein are from my own personal knowledge, or I have gained knowledge of them from the business records of Fiserv, which were made at or about the time of the events recorded, and which are maintained in the ordinary course of Fiserv's business at or near the time of the acts, conditions or events to which they relate. Any such document was prepared in the ordinary course of business of Fiserv by a person who had personal knowledge of the event being recorded and had a business duty to record accurately such event. I am one of the custodians of the books, records and files of Fiserv, and I am familiar with the records that relate to William Patrick. If called as a witness I could and would competently testify to the facts stated herein.

2. The records of Fiserv indicate that William S. Patrick, with a Social Security number ending in 8111 and living at 10543 Lubao Avenue, Chatsworth, California is the owner of a traditional IRA account at First Private Bank & Trust. The IRA Plan document associated with Mr. Patrick's IRA account is identical to the Internal Revenue Service's model IRA plan document which is IRS Form 5305.

3. Neither the Internal Revenue Service nor a court has ever made a determination that the IRA account in which William Patrick's funds are kept is not exempt. Furthermore, Mr. Patrick's IRA itself is in substantial compliance with the applicable requirements of the Internal Revenue Code.

I declare under penalty of perjury that the foregoing is true and correct and that this declaration was executed this __ day of July, 2007 at Denver, Colorado.

Denise Wilson

# DECLARATION OF WILLIAM S. PATRICK

I, William S. Patrick, declare:

1.    I am over 18 years of age. I am the debtor in the within bankruptcy case. I have personal knowledge of the facts set forth herein and, if called as a witness, I would and could testify completely with respect thereto.

2    Attached as Exhibit A hereto is a true and correct copy of my IRA plan document, given to me by First Private Bank & Trust, the holder of my IRA.

3.    I opened an IRA account the very first year they became available, in 1975. With rare exception I have contributed the maximum amount I could every year since 1975, $1500 per year initially, $2000 per year through 2001, and $3500 per year during 2003, 2004 and 2005. I made no contributions in 1988, 1990, 1999 and 2002.

4.    I have never made contributions to my IRA of more than the allowed limits in any one year. In other words, when the allowed deduction was $1500, I never contributed more than $1500 in any given year. When the allowed deduction was $2000 per year, I never contributed more than $2000 per year. Likewise, when the annual contribution limit went up to $3500, I never contributed more than $3500 per year.

5.    Since the inception of my IRA in 1975 it has earned interest. During the early 1980's my IRA was earning interest at rates of over 15% (fifteen percent) per year. My IRA has grown to its present balance because of the effect of compound interest, not because of any unusual contributions.

6.    I was born on September 20, 1934. Until I turned seventy-and-a-half (70-1/2) years old I did not touch my IRA account, and made no withdrawals from it.

///

///

///

///

1          7.      My only sources of income are Social Security ($928 per month)

2    and my United States Army Pension ($1392.83 per month). I am 72 years old and have not

3    worked nor earned income since 1999. I have no ability to obtain a job, and I am relying

4    upon my IRA funds to sustain me for the rest of my life.

5

6          I declare under penalty of perjury that the foregoing is true and correct and

7    that this declaration was executed this __ day of July, 2007 at Encino, California.

8

9                                        William S Patrick
                                         William S. Patrick
10

# EXHIBIT A

# Traditional & SEP

Traditional Individual Retirement Account
(IRA) and Simplified Employee Pension
Plan (SEP) Documents

Financial Institution Services

# Traditional/SEP Individual Retirement Account (IRA) Documents
# Table of Contents

Financial Institution Information . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . page 3

Adoption Agreement . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . pages 5-6

Disclosure Statement . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . pages 7-14

Savings Growth Table for Contributory IRAs . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . page 15

Savings Growth Table for Rollover IRAs . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . page 16

Trust Agreement . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . pages 17-22

SEP IRA – Questions and Answers for Employers . . . . . . . . . . . . . . . . . . . . . . . . . . . page 23

Notice to Adopting Employer . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . page 24

Form 5305-SEP . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . pages 25-26

SEP IRA – Questions and Answers for Employees . . . . . . . . . . . . . . . . . . . . . . . . . . . pages 27-28

Notice to the Employees . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . page 29-30

Privacy Policy . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . page 31

THIS PAGE
INTENTIONALLY BLANK

© Fiserv Trust Company, 2005

FI-FISS-3528 (9/05)

# Financial Institution Information

Name: _____

Address: _____

_____

_____

The above-named Financial Institution facilitates the establishment of your Traditional or SEP Individual Retirement Arrangement (IRA), serves as the depository of the funds you deposit into your Traditional or SEP IRA, maintains your Plan investments, and plays a significant role in the administration of your Traditional or SEP IRA.

As Trustee of your Traditional or SEP IRA, Fiserv Trust Company, monitors this Plan document to ensure its compliance with applicable laws. The Trustee does not, however, engage in the daily administration of your Plan or in the relationship between you and your chosen Financial Institution.

Your chosen Financial Institution also shares in many of the same duties as the Trustee. Because of the relationship between your Trustee and your chosen Financial Institution, most of the references to Trustee in this booklet also carry with them an implied reference to your chosen Financial Institution.

**Notice:** If you are the Participant of this Traditional or SEP IRA who is participating in a self-directed Traditional or SEP IRA, your investments in the deposit accounts (including money market, certificates of deposit and savings accounts) of your chosen financial institution (including Credit Unions and Savings and Loans), are insured by the Federal Deposit Insurance Corporation (FDIC) or the National Credit Union Association (NCUA), subject to their rules and regulations. Your self-directed investments, however, may not be insured by the FDIC or the NCUA. Self-directed investments may include stocks, bonds, mutual funds, etc.

THIS PAGE
INTENTIONALLY BLANK

© Fiserv Trust Company, 2005   FI-FISS-3528 (9/05)

| Financial Institution Name |
| --- |
| Branch Name or Number |
| Institution ID# / Participant ID # |

# Traditional IRA Adoption Agreement
# & Designation of Beneficiary

**Important Information About Procedures for Opening a New Account** **Note:** Federal law requires all financial institutions to obtain, verify, and record information that identifies each person who opens an account.

## GENERAL INFORMATION *(Please print or type)*

| | | |
| --- | --- | --- |
| Participant Name | | |
| Participant Mailing Address | | |
| City | State | Zip |
| Social Security Number (SSN) | Date of Birth | |
| Phone Number | **Marital Status:** ❑ Married  ❑ Single | |

## TYPE OF IRA *(Check one box only)*

❑ Traditional IRA    ❑ SEP IRA    ❑ Rollover IRA: For distribution from an employer-sponsored or other eligible retirement plan

| | | |
| --- | --- | --- |
| Opening Balance  $ | Account Number | **Effective Year** |

*Contribution Type: (check only one box)*

❑ Annual Contribution (including annual Catch-Up Contribution if applicable)    ❑ Trustee-to-Trustee Transfer from a Traditional IRA
❑ 60-Day Rollover from a Traditional IRA    ❑ Direct Rollover from an Employer Sponsored Plan

## BENEFICIARY INFORMATION

I hereby designate the following persons as Primary and Contingent Beneficiaries to receive my interest in this IRA according to the terms of the plan and trust agreement, hereby revoking any prior designations made by me. [          ] **Initial here if additional beneficiaries are designated on a separate attachment.**

## PRIMARY BENEFICIARIES

| **Full Name** | Date of Birth | SSN |
| --- | --- | --- |
| Address | | Relationship |
| **Full Name** | Date of Birth | SSN |
| Address | | Relationship |
| **Full Name** | Date of Birth | SSN |
| Address | | Relationship |

**NOTICE TO GRANTOR:** If you are married and live in a community property state or if you accumulated your assets while living in a community property state, your IRA assets may be subject to community property rules. If so, and if you wish to name a beneficiary other than your spouse, spousal consent may be required under state law. You should seek advice from your attorney for consent language that will constitute an effective waiver of community rights in your state.

**SPOUSAL CONSENT:** I am the spouse of the above-named IRA grantor. I acknowledge that I have received a fair and reasonable disclosure of my spouse's property and financial obligations. Due to the important consequences of giving up my interest in this IRA, I have been advised to see a tax professional. I hereby give the IRA holder any interest I have in the funds or property deposited in this IRA and consent to the beneficiary designation(s) indicated above. I assume full responsibility for any adverse consequences that may result. No tax or legal advice was given to me by either the Trustee or the Financial Institution.

| **Spouse's Signature** ✗ | Date |
| --- | --- |

*(Continued on next page.)*

**Traditional IRA Adoption Agreement & Designation of Beneficiary** *(continued)*

## CONTINGENT BENEFICIARIES

| Full Name | Date of Birth | SSN |
|-----------|---------------|-----|
| Address | | Relationship |
| Full Name | Date of Birth | SSN |
| Address | | Relationship |
| Full Name | Date of Birth | SSN |
| Address | | Relationship |

**GENERAL PROVISIONS** *(Refer to Plan and Trust Agreement for complete provisions.)*

1. Except as otherwise provided in the designation above, the balance of my IRA shall be paid upon my death to those Primary Beneficiaries who survive my death. If no Primary Beneficiary survives such death or if all Primary Beneficiaries die before the assets of the IRA are depleted, the balance of the IRA shall be payable in equal shares to those Contingent Beneficiaries who survive my death provided, however, that my spouse is not my sole Primary Beneficiary.

2. If my sole Primary Beneficiary is my spouse, my spouse has the right to name his or her own beneficiary and, in such event, upon the death of my surviving spouse, the balance will be paid to my spouse's beneficiaries.

   a. If my surviving spouse who is my sole Primary Beneficiary does not name a beneficiary, any amounts unpaid at the time of the surviving spouse's death shall be paid to my Contingent Beneficiaries in equal shares.

   b. If my surviving spouse who is my sole beneficiary dies without naming a beneficiary, my surviving spouse's beneficiary will be deemed to be the spouse of my surviving spouse or, if no such spouse, the estate of my surviving spouse.

3. If no Primary or Contingent Beneficiaries survive me, the balance in the IRA shall be paid upon my death to my spouse or, if no spouse survives me, to the personal representative of my estate.

4. The terms of the Trust Agreement, including any Amendments thereto that may hereafter be made, are controlling over these General Provisions and shall always govern all of my rights, the rights of my spouse and all Beneficiaries, and the rights of all persons claiming through any of them.

## ACCOUNT VESTING

The IRA will be vested as follows:

Fiserv Trust Company Trustee FBO* _____ *(insert participant's name)*

* FBO = For the Benefit Of

## ADOPTION OF PLAN AND SIGNATURES

I, the undersigned Participant, make the following declarations:

I hereby establish a Traditional Individual Retirement Arrangement (Traditional IRA) under the Traditional IRA Plan and Trust Agreement which is incorporated with this Adoption Agreement by this reference. I designate Fiserv Trust Company as the Trustee of this Traditional IRA and make the following declarations.

I agree to participate only in the ❏ savings investments offered by the financial institution that is acting as the custodian of my Traditional IRA, or only in the ❏ self-directed investments if offered, by the financial institution acting as the custodian of this Traditional IRA.

I have received a copy of the Plan and Trust Agreement/Disclosure Booklet, and a schedule of fees and/or charges from the financial institution that is acting as the custodian of my Traditional IRA. I have read the Plan and Trust Agreement and Disclosure Booklet and understand that I may revoke this Traditional IRA, in writing, at any time within seven (7) calendar days after the date of this Adoption Agreement.

I understand the eligibility requirements for the type of Traditional IRA deposit I am making and I state that I do qualify to make the deposit. I acknowledge that I am fully responsible for determining whether I am eligible to participate in a Traditional IRA and whether and to what extent I am otherwise entitled to favorable tax treatment by reason of my participation in this Traditional IRA, to the best of my knowledge, the information furnished above is correct and complete.

| | Date |
|---|------|
| **Signature of Participant** ✘ | |
| **Signature of Witness** ✘ | Date |
| **Printed Name of Witness** | |

## Traditional Individual Retirement Account (IRA)

# Disclosure Statement

Your Individual Retirement Account ("IRA"), as set forth in the IRA Trust Agreement, is designed to qualify for the favorable federal income tax treatment afforded IRAs under the provisions of the Employee Retirement Income Security Act of 1974 (ERISA), Section 408(a) of the Internal Revenue Code and related Regulations. This means that your IRA meets the federal requirements of an IRA; it does not, however, mean that it is suitable for everyone. This Booklet is designed to inform you about the IRA and to summarize the various federal laws and regulations that pertain to it. Current law requires that an IRA Trustee or Custodian be a bank or similar Financial Institution, not an individual.

If you have any questions or doubts, you should consult your personal tax advisor or **IRS Publication 590**, Individual Retirement Arrangements, for more detailed information. This publication is available from your local IRS office or by calling **800/TAX-FORMS** or on the web at **www.irs.gov**.

## REVOCATION OF ACCOUNT

You are entitled to revoke your IRA at any time within seven (7) calendar days of the date you establish the IRA by signing the IRA Adoption Agreement.

In the event you do revoke your IRA, all amounts you contributed to it and any fees, charges, or expenses charged to the IRA will be returned to you. You may revoke your IRA by sending a written notice of revocation to your Financial Institution.

To be effective, your notice of revocation must either be delivered by hand or postmarked within seven (7) days after the date you established your IRA.

**You should be aware of the following information:**

- Revocation is available only when you open your IRA by signing the Adoption Agreement. It is not available when you make a contribution to an existing IRA, and

- The Internal Revenue Service requires that the Trustee or issuer of your IRA report on Form 5498 your contribution to the IRA (unless it was made by a Trustee-to-Trustee transfer) and on Form 1099-R the distribution you receive when you revoke the IRA.

## PARTICIPANT CONTRIBUTIONS

### 1. WHO IS ELIGIBLE TO CONTRIBUTE TO AN IRA?

Any individual who has Compensation and will not reach age 70½ before the end of the year may establish and contribute to an IRA.

**Note:** The definition of Compensation is wages, salaries, professional fees, and other amounts received for personal services rendered. Also included is alimony that you report on your income tax return and earned income from self-employment (reduced by the deduction the self-employed individual takes for contributions made to a self-employed retirement plan). Compensation also does not include earnings or profits from property (such as interest and dividends), amounts not includible in gross income, and

amounts received as pension or annuity or as deferred compensation.

Contributions must be made in cash unless you are making a rollover contribution.

### 2. WHAT IS THE DEADLINE FOR ESTABLISHING AND CONTRIBUTING TO AN IRA?

The deadline for establishing an IRA and making contributions for a particular taxable year is the individual's tax filing deadline (usually April 15th), excluding extensions.

### 3. WHAT ARE INDIVIDUAL IRA CONTRIBUTION LIMITS?

For taxable years 2002 through 2004, an eligible individual may contribute to an IRA the lesser of $3,000 or 100% of Compensation.

For taxable years 2005 through 2007, an eligible individual may contribute to an IRA the lesser of $4,000 or 100% of Compensation.

In taxable year 2008, an eligible individual may contribute to an IRA the lesser of $5,000 or 100% of Compensation.

In taxable years after 2008, the $5,000 contribution limit will be adjusted for cost-of-living; however, in no case may the contribution exceed 100% of Compensation.

### 4. WHAT ARE SPOUSAL IRA CONTRIBUTION LIMITS?

In the case of a married couple filing a joint tax return for taxable years beginning in 2002 through 2004, up to $3,000 may be contributed to each spouse's IRA, even if one spouse has little or no taxable Compensation, so long as the combined IRA contribution does not exceed 100% of the combined Compensation of both spouses.

The total combined contributions that can be made to both IRAs for taxable years 2002 through 2004 is $6,000.

The total combined contributions that can be made to both IRAs for taxable years 2005 through 2007 is $8,000.

The total combined contributions that can be made to both IRAs for taxable year 2008 is $10,000.

In taxable years after 2008, the contribution limit will be adjusted for cost of living; however, in no case may it exceed the combined Compensation of the spouses.

No individual may make IRA contributions, or have spousal contributions made on his or her behalf, in the tax year in which the individual reaches age 70½.

### 5. WHAT ARE CATCH-UP CONTRIBUTIONS?

Catch-up contributions are a benefit for individuals who are age 50 or older. For taxable years beginning in 2002 through 2005, an

**Traditional Individual Retirement Account Disclosure Statement** *(continued)*

eligible participant who has turned age 50 before the end of the taxable year may contribute an additional $500 to his or her IRA. For taxable years beginning in 2006 and thereafter, the catch-up amount is increased to $1,000.

## 6. HOW WILL AN IRA AFFECT A PARTICIPANT'S INCOME TAXES?

How an IRA affects a participant's income taxes will depend upon certain conditions. Briefly, those conditions are as follows:

**A participant will be eligible for a full deduction for IRA contributions if:**

- He is not covered by an employer-sponsored retirement plan where he works. This applies regardless of the amount of the participant's adjusted gross income.

- He is single and covered by an employer-sponsored retirement plan at work, but his Modified Adjusted Gross Income (MAGI) in 2002 is less than $34,000 a year. (This figure will increase incrementally until the year 2005 at which time it will be $50,000. See chart at right.)

- He is married, files a joint tax return, is not covered by an employer-sponsored plan where he works although his spouse is covered by an employer-sponsored plan, and the joint MAGI is less than $150,000.

**A participant will be eligible for a partial deduction for IRA contributions if:**

- He is single, covered by an employer-sponsored retirement plan where he works, and his MAGI in 2002 is between $34,000 and $44,000. (This phase-out range will increase incrementally until the year 2005 at which time it will be between $50,000 and $60,000. See chart at right.)

- He is covered by an employer-sponsored retirement plan where he works, he files a joint income tax return with his spouse, and their MAGI in 2002 is between $54,000 and $64,000. (This phase-out range will increase incrementally until the year 2007 at which time it will be between $80,000 and $100,000. See chart at right.)

- He is married and files a joint tax return, and he or she is not covered by an employer-sponsored plan at work. The spouse, however, is covered by an employer-sponsored plan and their MAGI is between $150,000 and $160,000.

- He is covered by an employer-sponsored retirement plan where he works and he and his spouse file separate tax returns. In this case he is entitled to a partial deduction only if his MAGI is below $10,000.

**(Note:** The actual amount a participant is allowed to deduct is based on a formula that has been developed by the IRS. For a full explanation of the formula, contact any IRS office.)

A participant will not be eligible for any deduction for IRA contributions if:

- He is single, covered by an employer-sponsored plan where he works, and his adjusted gross income in 2002 is $44,000 or more. (This amount will increase incrementally until the year 2005 at which time it will be $60,000. See chart at right.)

- He is covered by an employer-sponsored retirement plan at work and he and his spouse file a joint tax return with an

MAGI in 2002 of $64,000 or more. (This amount will increase incrementally until the year 2007 at which time it will be $100,000. See chart below.)

- He is not covered by an employer-sponsored retirement plan where he works but his spouse is covered by one. He and his spouse file a joint tax return and their MAGI is $160,000 or more.

- He is covered by an employer-sponsored retirement plan where he works, he and his spouse file separately and his MAGI is $10,000 or more.

If a participant otherwise qualifies for an IRA contribution, he may make contributions even though they may not be deductible.

### DEDUCTIBILITY PHASE-OUT RANGE

| Year | Single Taxpayer | Married Taxpayer |
|------|-----------------|------------------|
| 2002 | $34,000 - 44,000 | $54,000 - 64,000 |
| 2003 | $40,000 - 50,000 | $60,000 - 70,000 |
| 2004 | $45,000 - 55,000 | $65,000 - 75,000 |
| 2005 | $50,000 - 60,000 | $70,000 - 80,000 |
| 2006 | $50,000 - 60,000 | $75,000 - 85,000 |
| 2007 | $50,000 - 60,000 | $80,000 - 100,000 |

Income (earnings) generated in an IRA will not be considered taxable income until withdrawn from the IRA. Except for transfers to a spouse due to a divorce, transfers to another IRA, and timely withdrawals of excess contributions, all distributions and withdrawals from an IRA will be taxable to the IRA participant or his or her beneficiary as ordinary income in the tax year in which they are received unless non-deductible or after tax contributions have been made to the account. If any nondeductible contributions have been made to the IRA, each distribution from the IRA will consist of a nontaxable portion and a taxable portion. Neither long-term capital gains treatment nor the special income averaging rules for lump sum distributions is available for IRA distributions.

## ROLLOVER CONTRIBUTIONS

### 1. WHO IS ELIGIBLE TO MAKE A ROLLOVER CONTRIBUTION TO AN IRA?

An individual may make a rollover contribution to an IRA if the contribution the individual wishes to make satisfies the definition of Qualifying Rollover Contribution.

A participant may make rollover contributions to an IRA even if he does not have any compensation.

There is no limitation on the amount of the rollover contribution an eligible individual may make to an IRA.

### 2. WHAT IS A QUALIFYING ROLLOVER CONTRIBUTION?

A Qualifying Rollover Contribution is a contribution that constitutes one of the following:

(a) An eligible rollover distribution from a qualified retirement plan, including an annuity plan and including after-tax contributions;

(b) A distribution from an individual retirement account;

© Fiserv Trust Company, 2005

FI-FISS-3528 (9/05)

(c) An eligible rollover distribution from a tax-sheltered annuity;

(d) The redemption proceeds of an IRA retirement bond; or

(e) a distribution of all or part of the accumulated deductible employee contributions held under a qualified plan.

The types of qualified plans the assets of which are eligible to be rolled over into an IRA include a qualified plan under IRC Section 401(a), a 403(b) plan, a qualified annuity plan under IRC Section 403(a), and an eligible 457(b) governmental plan.

Generally, it will not be necessary that a participant establish a separate conduit IRA to accept assets from qualified rollover distributions so that the assets may be rolled back into a qualified retirement plan at a future date. A separate conduit IRA should be established if a participant who was born before 1936 has concerns about capital gains and/or income averaging on distributions from his or her qualified plan.

A surviving spouse may roll over his distribution from a deceased participant's qualified plan into either his own qualified plan or his own IRA.

## 3. HOW DOES AN INDIVIDUAL MAKE A QUALIFYING ROLLOVER CONTRIBUTION?

Before a participant receives a distribution that is eligible for rollover, the trustee or administrator must ask the participant to decide how he wants to receive the distribution. He may choose to receive the distribution himself, or he may have it rolled over directly into an existing IRA, an IRA that he establishes to receive the distribution, or an eligible retirement plan. An eligible retirement plan includes an IRA, a qualified plan under IRC Section 401(a), a 403(b) plan, a qualified annuity plan under IRC Section 403(a), and an eligible 457(b) governmental plan.

If the participant chooses to receive the distribution directly, the trustee or administrator is generally required to withhold 20% federal income tax before distributing qualified plan assets to him. If he chooses a direct rollover to an IRA, the trustee or administrator will send the funds directly to the trustee or custodian of the IRA and the 20% withholding will not apply. The trustee or administrator will report the direct rollover as a distribution on Form 1099-R and the trustee or custodian of the IRA will report it as a rollover contribution to the IRA on Form 5498. A Rollover IRA contribution is not deductible and may exceed the annual contribution limit.

If the participant chooses to receive plan assets directly from a qualified plan and within 60 days decides to roll them over into an IRA, he may do so. He may rollover just the taxable amount he actually received from the trustee or administrator or he may add to that amount the 20% the trustee or administrator withheld. He will have to take funds from his savings (or from borrowed amounts) if he wants to add the 20% the trustee or administrator withheld to the amount he is rolling over.

The 60-day time limit also applies if the Qualifying Rollover Contribution is from an IRA, an annuity, or another eligible retirement plan.

## MOVEMENT OF IRA ASSETS

### 1. MAY AN IRA PARTICIPANT MOVE AN EXISTING IRA FROM ONE FINANCIAL INSTITUTION TO ANOTHER?

Yes. There are basically two methods for moving an existing IRA from one financial institution to another.

**a. Distribution and Redeposit Method**

A participant can move an IRA to another Financial Institution by requesting a distribution from his existing IRA that he redeposits into another IRA within 60 days. The participant may not take a tax deduction for the amount that he redeposits. Using this method means that the participant will sign a Cash Distribution Request form and a check will be made payable to the participant, not to the new Trustee or Custodian. Remember, this is moving funds from one IRA to another, not a distribution from an employer's qualified plan, and it is not subject to the 20% withholding. After receiving the distribution, the participant may redeposit all or a portion to another IRA without including the redeposited amount in his gross income, provided the amount redeposited is invested in the other IRA within 60 days after receipt of the distribution. However, the 60-day rule for redeposit of the funds to another IRA will not apply if the participant has deposited the IRA funds in a non-IRA account and the account is frozen because of the bankruptcy or insolvency of the Financial Institution. When he receives the IRA funds that were frozen, he will have 10 days to redeposit the funds into another IRA.

If a participant moves an IRA from one Financial Institution to another by receiving a distribution and redepositing it, he may be required by the new Trustee or Custodian to state, in writing, that the amount he is redepositing is eligible for rollover.

A participant is allowed to move IRA funds by the distribution and redeposit method once in a twelve month period, not once a year. The twelve month limitation applies to each IRA separately, not to each account under one IRA. Even though a participant intends to roll over the distribution to another IRA, the Trustee or Custodian of the existing IRA will be required to report the distribution to the IRS on Form 1099-R. This does not mean the distribution is taxable if the funds are redeposited within 60 days and receipt of the funds is properly reported on the participant's income tax return for that year. When the funds are deposited into another IRA, the Trustee or Custodian will report the rollover deposit to the IRS on Form 5498.

**b. Trustee-to-Trustee Transfer Method**

To initiate a Trustee-to-Trustee Transfer, contact the Financial Institution to which you would like your funds transferred. That Financial Institution will complete the necessary transfer form(s) for your signature and send the form(s) to the current Trustee or Custodian of your IRA requesting that your IRA funds be transferred directly to them. The transfer will not result in a distribution being reported to the IRS, and the transfer will not be subject to the twelve month limitation period mentioned earlier, as long as none of the IRA funds are distributed directly to you. You should allow at least three weeks for the transfer to be completed. The transfer of investments other than

deposit accounts of the Financial Institution may take longer than three weeks.

## DISTRIBUTIONS

### 1. HOW ARE DISTRIBUTIONS FROM IRAs HANDLED?

#### a. Normal Distributions

At any time after a participant reaches the age of 59½, he will be entitled to begin receiving distributions from his IRA. He may elect to receive a lump sum distribution, a partial distribution, or installments over (1) his lifetime, (2) the joint lifetimes of him and his designated beneficiary, or (3) any number of years he selects, but not exceeding the joint lifetimes of him and his designated beneficiary.

#### b. Premature Distributions

In most cases, if a participant receives a distribution from his IRA before he reaches age 59½, it is a premature distribution which is subject to an excise tax penalty of 10%. The following situations are exceptions:

(1) Distributions made due to disability,

(2) Distributions made to a beneficiary(ies) because of the participant's death,

(3) Distributions used to pay medical expenses that exceed 7.5% of the participant's adjusted gross income,

(4) Distributions used to pay for health insurance premiums if a participant has separated from employment and has received state or federal unemployment compensation for at least 12 weeks,

(5) Distributions made to cover qualified higher education expenses,

(6) Distributions for qualifying first-time home purchases (up to a lifetime maximum of $10,000), and

(7) Distributions made at least annually that are part of a series of substantially equal periodic payments made over (a) the participant's life expectancy or (b) the joint life expectancies of the participant and his designated beneficiary. If distributions are not subject to the 10% premature excise tax because of this exception, that tax will be imposed if the participant changes the distribution method prior to the lapse of 5 years or attainment of age 59½, whichever is later. This additional tax will be imposed the year that the participant changes the distribution method and will be retroactive to the date the distribution began under this method.

#### c. Taxation of Distributions

Under federal laws, distributions will be subject to withholding unless the participant elects not to have tax withheld. Because nondeductible IRA contributions are made using income which has already been taxed (that is, they are not deductible contributions), the portion of the IRA distribution attributable to nondeductible contributions will not be taxed again when distributed. If a participant makes any nondeductible IRA contributions, each distribution from his IRA will consist of a nontaxable portion (return of nondeductible contributions) and a taxable portion (return of deductible contributions and earnings). Thus, in this case, a participant may not take a distribution which is tax-free.

When a participant receives a distribution from his IRA and he has made a nondeductible contribution to his IRA during that year, the participant may obtain **IRS Publication 590** and **IRS Form 8606** to assist him in calculating the taxable and non-taxable amount of his IRA distribution. When a participant receives an IRA distribution and all his nondeductible contributions were made in prior years, he will not need IRS publication 590; only IRS Form 8606 will be required to figure the taxable portion of the distribution.

#### d. Mandatory Distribution Rules

##### (1) Distributions Before Death

The minimum distribution rules require that in your 70½ year and every year thereafter you must make withdrawals from your IRA that are at least equal to the "minimum required distribution." Your 70½ year is the calendar year that contains the date six months after your 70th birthday.

The minimum required distribution amount, beginning with the calendar year in which the participant attains age 70½ and continuing through the year of death, is obtained by dividing the value of the IRA as of the end of the preceding year by the distribution period in the Uniform Life Table found in the IRS Treasury Regulations, using the participant's age on his birthday in the distribution year. However, if the participant's only beneficiary is the participant's spouse, then the minimum required distribution amount is obtained by dividing the value of the IRA as of the end of the preceding year by the longer of the distribution period in the Uniform Lifetime Table, using the participant's age on his birthday in the year, or the distribution period in the Joint and Last Survivor Table in the IRS Treasury Regulations, using the ages as of the participant's and spouse's birthdays in the year.

##### (2) Distributions After Death

Generally, by December 31 following the year in which the participant dies, distributions to the designated beneficiary (if an individual) must have begun. Generally, the minimum required distribution amount for a beneficiary will be determined by dividing the beneficiary's interest in the IRA as of the end of the preceding year by the appropriate number in the Single Life Table found in the IRS Treasury Regulations corresponding to the beneficiary's age in the year following the year of the participant's death and reduced by one for each subsequent calendar year.

If distributions to an individual beneficiary have not begun by December 31 following the year in which the participant died, the entire account then must be distributed by December 31 of the year containing the fifth anniversary of the participant's death (although a special transition rule permits a beneficiary who did not start receiving distributions by December 31 following the year of the participant's death to switch to using the beneficiary's life expectancy as the distribution period if the amounts that would have been

distributed to the beneficiary based on the beneficiary's life expectancy for all years after the participant's death are distributed to the beneficiary no later than December 31, 2003, or, if earlier, the expiration of the five-year period).

Please consult your tax advisor and see the IRA Trust Agreement for details of these distribution rules, including the special rules that apply if the beneficiary is the participant's surviving spouse.

Under this Plan, a surviving spouse may elect to treat the account as his or her own IRA if that election is made in writing to the Trustee. Alternatively, this election will be deemed to have been made if the surviving spouse makes a contribution to the account of the deceased Participant or fails to take minimum required distributions as a Beneficiary.

### (3) Multiple IRAs

If a participant has more than one IRA, he may satisfy the minimum required distribution rules by withdrawing from one IRA the amount required to satisfy the minimum distribution requirements for all his IRAs.

### e. Trust Agreement Default Provision

If the participant does not elect a form of distribution upon attaining age 70½, the participant will be deemed to have elected to commence distributions using the distribution period in the Uniform Lifetime Table in Regulations Section 1.401(a)(9)-9, using the participant's age as of his birthday in the year. After the death of the participant, if the beneficiary or beneficiaries have not elected a form of distribution, the beneficiaries will be deemed to have elected to receive their IRA interests no later than December 31 of the year containing the fifth anniversary of the participant's death.

The participant (or, after the participant's death, each beneficiary) shall be responsible for computing the amount and form of the distribution required to be paid to him each year from the Trust Account, for determining the date by which the amount shall be paid, and for timely providing this information to the Trustee in writing in a form acceptable to the Trustee. In the event such information is not provided, the Trustee may assume the participant's minimum distribution requirement for this Trust Account has been satisfied by distribution from another IRA.

### f. Beneficiary Dispute

If, after a participant's death, the Trustee receives written notice that the heirs do not agree with the primary beneficiary(ies) named to receive the IRA funds, the Trustee will not pay out the IRA funds until the dispute is settled.

### g. Procedures for Requesting Distributions

The Trustee must authorize all distributions from an IRA. The participant must contact the representative at his Financial Institution for the appropriate forms that must be completed and sent to the Trustee for approval prior to actual distribution.

### h. Transfer of Account Incident to Divorce

A state domestic relations court may award a participant all or a portion of a former spouse's IRA in connection with a divorce, annulment, or legal separation. If the participant receives this type of court-ordered award, it must be transferred into an IRA in the participant's own name and will remain tax deferred until the participant withdraws the funds. Unlike funds received under a Qualified Domestic Relations Order (QDRO), which are not required to be rolled over into an IRA, funds awarded under a Transfer Pursuant to Divorce can not be distributed to the participant directly from a former spouse's IRA.

## 2. ARE THERE ANY FEDERAL TAX PENALTIES?

### a. Excess Contribution Tax Penalties

An excess contribution is generally any contribution that exceeds the allowable contribution limit. Any one of the following circumstances may cause an excess contribution:

### (1) Excess Contribution

(a) an individual contributes more than the lesser of the IRS maximum contribution amount for the year or 100% of compensation to his IRA, (b) an individual age 70½ or older makes a contribution to an IRA, (c) a contribution is made for an individual after his or her date of death, (d) an individual "rolls over" an age 70½ required minimum distribution, (e) an individual rolls over an ineligible rollover contribution (the 60 day limit may have expired), (f) an individual under age 50 makes a catch-up contribution to an IRA, (g) an employer makes an excess SEP contribution into an employee's IRA, or (h) an individual makes an improper transfer of assets to the IRA.

### (2) Unwanted Contribution

If an individual has an IRA, he will normally contribute only the allowable amount each year. However, all of his contribution may not be allowable as an income tax deduction. The IRS allows an individual to withdraw any regular contribution, whether or not it was a true excess for any reason. In order to be treated as if the Unwanted Contribution never was made, an Unwanted Contribution must be withdrawn prior to the individual's tax-filing deadline in exactly the same manner as a true excess contribution would be withdrawn.

### (3) Correcting Excess Contributions Prior to Tax Filing

If an individual makes an excess contribution, he can avoid the 6% federal excise tax by withdrawing the excess amount plus the net income earned by the IRA and attributable to the excess contribution. However, the withdrawal must be made on or before the time for filing your income tax return (including extensions) for the tax year in which the excess contribution was made. The amount of excess contribution withdrawn will not be includible in an individual's gross income (provided that he did not previously take a deduction for the excess) and will not be subject to the 10% federal penalty tax on premature distributions. Earnings on the excess contribution, which must be included in the distribution to avoid the excise tax, are taxable and must be included in the gross income for the tax year in which the excess contribution is made. The earnings withdrawn are also subject to the 10%

© Fiserv Trust Company, 2005

federal penalty tax on premature distributions for the year of the distribution unless the individual has attained the age of 59½, is disabled, or if the premature distribution penalty tax otherwise does not apply. In addition, the Financial Institution may be required to impose an early withdrawal penalty if his certificate has not matured.

**(4) Excise Penalty Tax on Excess Contributions**

A 6% federal excise penalty tax is imposed on excess IRA contributions which are not withdrawn prior to the individual's tax filing deadline including extensions. The tax is imposed in the year the excess contribution is made and for each later year until the excess contribution is corrected.

**(5) Correcting Excess Contributions After Tax Filing Deadline**

If the total contribution to an IRA for any tax year does not exceed the dollar limit for annual IRA contributions and all or part of the amount contributed is an excess contribution, an individual may withdraw the excess amount after the due date for filing his income tax return (including extensions) for the tax year. He may still incur a 6% federal excise penalty tax for the excess and may be subject to a 10% premature distribution penalty if he is under age 59½ (and is not otherwise exempt from the premature distribution penalty tax). If he did not take an income tax deduction, he will not be required to include the amount withdrawn in income. Furthermore, he is not required to withdraw any of the earnings attributable to the excess contribution.

If an individual's total contribution to an IRA is greater than the dollar limit for annual IRA contributions, and if the excess is withdrawn after the due date for filing an individual's income tax return, the entire distribution will be included in gross income, even if the amount of the excess was not originally deductible. Also, he may still incur a 6% federal penalty tax for the year of the excess and for each following year until the excess is removed. If he has not reached the age of 59½, is not disabled, or is not otherwise exempt from the premature distribution penalty tax, the amount distributed to him will also be subject to the 10% penalty tax on premature distributions. He is not required to withdraw any of the earnings attributable to the excess.

**(6) Reallocating Excess Contributions to Future Years**

An individual may correct an excess contribution by reallocating it as a contribution for a future year. In order to reallocate, he simply contributes less than the maximum allowable contribution for the next year. He will be subject to a 6% federal excise penalty tax for the year he made the excess contribution; however, no other federal penalties will be imposed and the excise tax on the reallocated excess contribution will be eliminated for future years. Since no withdrawal is made, no premature withdrawal penalties will be imposed. The individual does not have to notify the Financial Institution or the Trustee, nor will there be reporting to the IRS. He is, however, required to file

IRS Form 5329 when he files his income tax return for the year the excess contribution was made in order to report the amount of the excess and the amount of the excise penalty tax due to the IRS.

**b. Premature Distribution Tax Penalties**

**(1) 10% Penalty Tax**

Except as otherwise indicated (see Section 1(b) under "Distributions" above), there is a 10% federal penalty tax on distributions an individual receives from an IRA before he reaches age 59½. This is in addition to the income tax due on the amount disbursed, which is included in gross income. **For example:** An individual has not reached age 59½ and no other exceptions to the premature distribution penalty tax apply. He receives a payment of $1,000 from his IRA which is composed entirely of deductible contributions and earnings. The payment will increase his income by $1,000 and will thus increase his tax liability. His tax liability will also be increased by a $100 penalty tax (10% x $1,000). **Note:** California residents will also be subject to an additional 2.5% state penalty tax, and the amount distributed will be included in their income for the year.

**(2) Disqualification of Program**

If an IRA is disqualified (see "Prohibited Transactions" discussed later), it will be taxed as if it were distributed, whether or not the individual actually receives it. If he has not reached age 59½, it is also subject to additional premature penalties, described above, on the amount of the distribution.

**(3) Disability Cases**

If an individual is disabled and receives payments from his IRA, there is no 10% federal penalty tax (or 2.5% state tax if he is a California resident). It makes no difference whether or not he has reached age 59½. The IRS defines disability as "the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or to be of long-continued and indefinite duration."

**(4) Pledging an Account as Security**

If an individual uses all or a portion of an IRA as security for a loan, that portion is treated as a distribution to him. If he has not reached age 59½ and is not disabled (and is not otherwise excepted from the penalty tax), he will also be subject to the premature penalty taxes described above.

**c. Prohibited Transaction Tax Penalties**

If an individual commits a "prohibited transaction" with his IRA, it will no longer be exempt from tax as of the first day of the tax year in which the prohibited transaction occurred. If this should happen, he must include the fair market value of all IRA assets in income for that tax year. The fair market value is determined as of the first day of that tax year. If he has not reached age 59½, he may also be liable for a 10% federal penalty tax on the distribution.

Some examples of prohibited transactions are borrowing

money from a trust that belongs to the IRA participant, buying property from a trust that belongs to the IRA participant, selling property to your own trust, and receiving unreasonable compensation for managing the trust. These prohibited transactions also apply to a noncompensated spouse in a spousal IRA.

**d.  Underdistribution Tax Penalties**

Amounts contributed to an IRA are to be used for retirement. They are not to be kept in the trust indefinitely. Participants must start receiving distributions no later than the first day of April of the year following the calendar year in which they become age 70½. If they do not commence distribution at that time, the institution will have the option of either distributing the required annual minimum payment or distributing the total balance in a lump sum.

An underdistribution is the excess of the minimum payout required for the year over the amount actually distributed. There is a 50% federal excise tax on the underdistribution. The tax is paid by the recipient of the distribution. **For example:** If the minimum payout should have been $1,000 and the participant receives a distribution of $600, the underdistribution is $400. The federal excise tax on this amount is $200 ($400 x 50%).

If it is shown that the underdistribution is due to reasonable error and reasonable steps are taken to correct the situation, the 50% excise tax may be waived for the taxable year. For more information on how to compute the excise tax on underdistributions from IRA accounts, see specific IRS Instructions for Form 5329, Return for Additional Taxes Attributable to Qualified Retirement Plans (Including IRAs), Annuities, and Modified Endowment Contracts.

## 3. ARE THERE ANY OTHER TAX CONSIDERATIONS?

The information in this disclosure statement relates primarily to federal tax laws affecting IRAs. Each participant should consult with a local tax advisor for specific information regarding the taxation of IRAs for the state in which he lives.

## 4. WHAT ARE THE FEDERAL FILING REQUIREMENTS?

**a.  Form 5329**

IRS Form 5329, Return for Additional Taxes Attributable to Qualified Retirement Plans (Including IRAs), Annuities, and Modified Endowment Contracts, must be filed if a participant (a) owes a tax due to excess contributions to his IRA, (b) owes a tax on early distributions from his IRA, or (c) owes an underdistribution tax. (See the Instructions for Form 5329 for further information.)

**b.  Forms 1099-R and 5498**

The Trustee of your IRA is required to file Form 1099-R in most cases when funds are distributed from your IRA, regardless of whether the distribution is actually taxable to you. **For example:** You may have received a distribution from your IRA and rolled over the funds into another IRA within 60 days. Although the transaction would not normally constitute a taxable event, your Trustee is still required to report the distribution to the IRS and any state agencies as required. You would then have to substantiate that you did reinvest the funds within the allowed time period. Partial, periodic, and total distributions are all

reported on Form 1099-R. In addition, the trustee is also required to file Form 5498 with the IRS. This form reflects all IRA contributions made for that reporting year, as well as other information relating to your IRA. You will be furnished with copies of all forms filed with the IRS.

**c.  Other Filing Requirements**

Depending on an individual's situation and state of residency, he may be required to file additional forms. A participant should check with a tax advisor, state agency, and the Internal Revenue Service for the specific information.

## 5. HOW ARE INVESTMENTS HANDLED AND HOW MUCH GROWTH CAN I EXPECT?

**a.  Investments**

All contributions made to your IRA will be invested in savings instruments or other investments at or through your Financial Institution or, if permitted, with a broker/dealer which may be affiliated with your Financial Institution or with the Trustee. Each participating Financial Institution has the right to determine which type of account(s) or other investments it will offer to its IRA participants, the rate of earnings paid on the account(s), and the method for calculating those earnings. In addition, the accounts will, at times, be subject to the provisions of the laws and regulations then in effect governing deposits in your Financial Institution. It is advisable, therefore, that you check with your Financial Institution prior to making any withdrawals, since these transactions may result in substantial penalties. Investments in other than savings deposits must be authorized by your Financial Institution and accepted by your Trustee. In general, under the Trust, IRA assets may not be commingled with other IRAs or other property except in a common trust fund or commingled investment fund, and insurance contracts are not allowed as investments. Generally, you select the amount and alternatives offered for the investment of your IRA. If you select to open a brokerage account in connection with your IRA, you will choose the securities to be bought and sold within the investment guidelines adopted by your Trustee. You will be solely responsible for the performance of the investments you select. Funds invested in securities are not protected by federal deposit insurance. All investments will be established in the name of the Trustee (for the benefit of the participant), and any withdrawals, distributions, or transfers must have the prior written approval of the Trustee. All accounts will be established for the benefit of the IRA participant. Under no circumstances may the accounts be set up as "joint tenancy" accounts or for the benefit of someone other than the participant. Your interest in the assets of your IRA is nonforfeitable at all times; it cannot be taken away.

There are other types of investments which the Trustee considers acceptable for Self-Directed IRAs. Those acceptable investments may either be part of the Brokerage Disclosure you received when you opened your Self-Directed IRA or part of the Brokerage Application you received when you opened your Self-Directed IRA. If you choose to invest in any investment which is unacceptable to the Trustee or the Recordkeeper, you may receive a written notice that the investment is not acceptable. You will be asked for direction regarding the disposition of

those investments. If within 60 days you have made no arrangement to remove the unacceptable investment from your IRA, the Trustee may distribute the unacceptable investment assets to you and report the distribution as taxable income to you in the year the investment is removed from your IRA.

**b.  Collectibles**

You may not invest the assets of your IRA in collectibles (within the meaning of Internal Revenue Code (IRC) Section 408(m)). A collectible is described as any work of art, antique, gem, metal, stamp, coin, alcoholic beverage, or other tangible property specified by the Internal Revenue Service. Specially minted United States gold and silver bullion coins and certain state-issued coins are allowed investments. Also, under the provisions of the Taxpayer Relief Act of 1997, certain gold, silver, platinum or palladium bullion are permissible IRA investments after January 1, 1998. Your Trustee, however, will not accept investments in bullion or in coins of any kind.

**c.  Projected Account Balances**

The balance of your Individual Retirement Account will generally increase as a direct result of both the level of contributions and earnings on the accumulated contributions and accumulated income. Investments in securities, however, are subject to fluctuation in value due to market conditions. The earnings will be computed and allocated in accordance with the type of investment vehicles selected as described on the attached chart. If you select stocks, bonds, mutual funds, or other types of securities as investments, it is not possible to project the growth of your account in the future. If you select investments in savings accounts, it is possible to project the amount of money that would be available to you at various points in the future, assuming a level annual contribution and a constant rate of earnings on the vehicles in which the funds are invested.

The first growth rate table (page 9) can give you an idea of what kind of growth you could expect if you made level annual contributions in the allowable amount of $1,000 on the first day of each taxable year, assuming a constant rate of earnings stated. The second growth table projects the growth of your Rollover IRA if you made an initial and only contribution of $1,000 on the first day of the year and no other contributions were made.

**d.  Factors Affecting Balances**

The amounts listed on the charts are projections only, and do not necessarily reflect the amount that you could withdraw in all events. The rate of earnings, compounding thereof, and method of calculation on the investment vehicle selected are subject to change and cannot be guaranteed for the period shown. If you select a fixed-term investment, the balances shown may be subject to a penalty if an early withdrawal is made from the investment before the end of the term. For more detailed information regarding penalties for early withdrawal of principal, you should review your Financial Institution's rules of class for the investment you have selected.

**e.  Administration Charges**

Your Financial Institution has made arrangements to compensate the Trustee for the services provided. If you are permitted to open a brokerage account in connection with your IRA, any broker/dealer affiliated with your Financial Institution or with the Trustee will be entitled to compensation for services provided. Normally, the fees or commissions connected with the sale or purchase of securities will be subtracted from the proceeds of the sale or, if a purchase, debited from your IRA when the purchase is made. Some types of mutual funds charge for purchases ("load funds"), some for sales, and some ("no load funds") charge a management fee. You should carefully review the prospectus related to any security or mutual fund before purchasing it. If you have opened a Self-Directed IRA, you have received a schedule of brokerage charges for securities transactions. Your Financial Institution or Trustee may receive a portion of the brokerage charges as additional compensation. In some cases, a portion of the commission or management fee received by the sponsor of the mutual fund will be paid to the Trustee or your Financial Institution as compensation for record keeping. The charges, which you will pay or which will be deducted from your IRA, if any, are listed on the attached chart which is incorporated into this Disclosure Statement and made a part of it.

# Savings Growth Table
# for <u>Contributory</u> Individual Retirement Accounts

The following growth chart represents projections only and does not necessarily reflect the actual amount you can withdraw in all events. The amounts shown indicate the least amount projected as available for withdrawal from your IRA at the end of each of the first five years and at the end of the years in which you reach the ages of 60, 65, and 70, given the assumptions listed below. If your Financial Institution currently pays a higher rate of interest, waives or charges lesser fees, and/or waives or imposes a lesser penalty, the amount available for withdrawal may actually be greater than the amount listed on the chart.

**Assumptions**
- $1,000 Annual Contribution on the first day of the year
- 2.00% Annual Interest Rate, compounded daily
- 2.02% Annual Percentage Yield
- One Time Set-Up Fee ..................................$5
- Administrative Fee.......................................$25
- Simple Interest Penalty......................6 Months
- Miscellaneous .............................................$0

**The amount available for withdrawal the first five years and at age 60, 65, and 70:**

- First Year ................$979.70
- Second Year ........$1,984.24
- Third Year ............$3,009.07
- Fourth Year ........$4,054.60
- Fifth Year............$5,121.26

| Amount available for withdrawal at the end of the year in which the participant attains age: | | | |
|---|---|---|---|
| Present Age | 60 | 65 | 70 |
| 18 | 66,437.02 | 78,550.79 | 91,938.55 |
| 19 | 64,156.27 | 76,030.18 | 89,152.84 |
| 20 | 61,920.67 | 73,559.47 | 86,422.29 |
| 21 | 59,729.34 | 71,137.68 | 83,745.81 |
| 22 | 57,581.41 | 68,763.85 | 81,122.33 |
| 23 | 55,476.00 | 66,437.02 | 78,550.79 |
| 24 | 53,412.28 | 64,156.27 | 76,030.18 |
| 25 | 51,389.42 | 61,920.67 | 73,559.47 |
| 26 | 49,406.62 | 59,729.34 | 71,137.68 |
| 27 | 47,463.08 | 57,581.41 | 68,763.85 |
| 28 | 45,558.03 | 55,476.00 | 66,437.02 |
| 29 | 43,690.69 | 53,412.28 | 64,156.27 |
| 30 | 41,860.33 | 51,389.42 | 61,920.67 |
| 31 | 40,066.21 | 49,406.62 | 59,729.34 |
| 32 | 38,307.62 | 47,463.08 | 57,581.41 |
| 33 | 36,583.85 | 45,558.03 | 55,476.00 |
| 34 | 34,894.21 | 43,690.69 | 53,412.28 |
| 35 | 33,238.03 | 41,860.33 | 51,389.42 |
| 36 | 31,614.64 | 40,066.21 | 49,406.62 |
| 37 | 30,023.39 | 38,307.62 | 47,463.08 |
| 38 | 28,463.66 | 36,583.85 | 45,558.03 |
| 39 | 26,934.80 | 34,894.21 | 43,690.69 |
| 40 | 25,436.22 | 33,238.03 | 41,860.33 |
| 41 | 23,967.32 | 31,614.64 | 40,066.21 |
| 42 | 22,527.49 | 30,023.39 | 38,307.62 |
| 43 | 21,116.18 | 28,463.66 | 36,583.85 |
| 44 | 19,732.82 | 26,934.80 | 34,894.21 |
| 45 | 18,376.84 | 25,436.22 | 33,238.03 |

| Amount available for withdrawal at the end of the year in which the participant attains age: | | | |
|---|---|---|---|
| Present Age | 60 | 65 | 70 |
| 46 | 17,047.71 | 23,967.32 | 31,614.64 |
| 47 | 15,744.91 | 22,527.49 | 30,023.39 |
| 48 | 14,467.89 | 21,116.18 | 28,463.66 |
| 49 | 13,216.17 | 19,732.82 | 26,934.80 |
| 50 | 11,989.23 | 18,376.84 | 25,436.22 |
| 51 | 10,786.58 | 17,047.71 | 23,967.32 |
| 52 | 9,607.75 | 15,744.91 | 22,527.49 |
| 53 | 8,452.26 | 14,467.89 | 21,116.18 |
| 54 | 7,319.65 | 13,216.17 | 19,732.82 |
| 55 | 6,209.46 | 11,989.23 | 18,376.84 |
| 56 | 5,121.26 | 10,786.58 | 17,047.71 |
| 57 | 4,054.60 | 9,607.75 | 15,744.91 |
| 58 | 3,099.07 | 8,452.26 | 14,467.89 |
| 59 | 1,984.24 | 7,319.65 | 13,216.17 |
| 60 | 979.70 | 6,209.46 | 11,989.23 |
| 61 | | 5,121.26 | 10,786.58 |
| 62 | | 4,054.60 | 9,607.75 |
| 63 | | 3,009.07 | 8,452.26 |
| 64 | | 1,984.24 | 7,319.65 |
| 65 | | 979.70 | 6,209.46 |
| 66 | | | 5,121.26 |
| 67 | | | 4,054.60 |
| 68 | | | 3,009.07 |
| 69 | | | 1,984.24 |
| 70 | | | 979.70 |

© Fiserv Trust Company, 2005

FI-FISS-3528 (9/05)

# Savings Growth Table
# for <u>Rollover</u> Individual Retirement Accounts

The following growth chart represents projections only and does not necessarily reflect the actual amount you can withdraw in all events. The amounts shown indicate the least amount projected as available for withdrawal from your IRA at the end of each of the first five years and at the end of the years in which you reach the ages of 60, 65, and 70, given the assumptions listed below. If your Financial Institution currently pays a higher rate of interest, waives or charges lesser fees, and/or waives or imposes a lesser penalty, the amount available for withdrawal may actually be greater than the amount listed on the chart.

**Assumptions**
- $1,000 One Time Contribution on the first day of the year
- 2.00% Annual Interest Rate, compounded daily
- 2.02% Annual Percentage Yield
- One Time Set-Up Fee ................................... $5
- Administrative Fee ...................................... $25
- Simple Interest Penalty ...................... 6 Months
- Miscellaneous .............................................. $0

**The amount available for withdrawal the first five years and at age 60, 65, and 70:**

- First Year ................ $979.70
- Second Year .......... $974.24
- Third Year .............. $968.67
- Fourth Year .......... $962.99
- Fifth Year .............. $957.19

| Amount available for withdrawal at the end of the year in which the participant attains age: | | | |
|---|---|---|---|
| Present Age | 60 | 65 | 70 |
| 18 | 623.96 | 558.13 | 485.37 |
| 19 | 636.36 | 571.83 | 500.51 |
| 20 | 648.51 | 585.26 | 515.35 |
| 21 | 660.42 | 598.42 | 529.90 |
| 22 | 672.09 | 611.32 | 544.15 |
| 23 | 683.53 | 623.96 | 558.13 |
| 24 | 694.75 | 636.36 | 571.83 |
| 25 | 705.74 | 648.51 | 585.26 |
| 26 | 716.52 | 660.42 | 598.42 |
| 27 | 727.08 | 672.09 | 611.32 |
| 28 | 737.43 | 683.53 | 623.96 |
| 29 | 747.58 | 694.75 | 636.36 |
| 30 | 757.53 | 705.74 | 648.51 |
| 31 | 767.28 | 716.52 | 660.42 |
| 32 | 776.84 | 727.08 | 672.09 |
| 33 | 786.20 | 737.43 | 683.53 |
| 34 | 795.39 | 747.58 | 694.75 |
| 35 | 804.39 | 757.53 | 705.74 |
| 36 | 813.21 | 767.28 | 716.52 |
| 37 | 821.86 | 776.84 | 727.08 |
| 38 | 830.33 | 786.20 | 737.43 |
| 39 | 838.64 | 795.39 | 747.58 |
| 40 | 846.79 | 804.39 | 757.53 |
| 41 | 854.77 | 813.21 | 767.28 |
| 42 | 862.59 | 821.86 | 776.84 |
| 43 | 870.26 | 830.33 | 786.20 |
| 44 | 877.78 | 838.64 | 795.39 |
| 45 | 885.15 | 846.79 | 804.39 |

| Amount available for withdrawal at the end of the year in which the participant attains age: | | | |
|---|---|---|---|
| Present Age | 60 | 65 | 70 |
| 46 | 892.38 | 854.77 | 813.21 |
| 47 | 899.46 | 862.59 | 821.86 |
| 48 | 906.40 | 870.26 | 830.33 |
| 49 | 913.20 | 877.78 | 838.64 |
| 50 | 919.87 | 885.15 | 846.79 |
| 51 | 926.40 | 892.38 | 854.77 |
| 52 | 932.81 | 899.46 | 862.59 |
| 53 | 939.09 | 906.40 | 870.26 |
| 54 | 945.24 | 913.20 | 877.78 |
| 55 | 951.28 | 919.87 | 885.15 |
| 56 | 957.19 | 926.40 | 892.38 |
| 57 | 962.99 | 932.81 | 899.46 |
| 58 | 968.67 | 939.09 | 906.40 |
| 59 | 974.24 | 945.24 | 913.20 |
| 60 | 979.70 | 951.28 | 919.87 |
| 61 | | 957.19 | 926.40 |
| 62 | | 962.99 | 932.81 |
| 63 | | 968.67 | 939.09 |
| 64 | | 974.24 | 945.24 |
| 65 | | 979.70 | 951.28 |
| 66 | | | 957.19 |
| 67 | | | 962.99 |
| 68 | | | 968.67 |
| 69 | | | 974.24 |
| 70 | | | 979.70 |

© Fiserv Trust Company, 2005

FI-FISS-3528 (9/05)

# Traditional Individual Retirement Account (IRA)

# Trust Agreement

**Trustee: FISERV TRUST COMPANY**
717 17th Street, Suite 1700
Denver, CO 80202-3331
800/492-0165

Fiserv Trust Company as Sponsor hereby adopts this Individual Retirement Account Trust Agreement as an amendment in full to its previous Trust Agreement.

The Grantor whose name and signature appear on the Adoption Agreement is establishing an individual retirement account under Section 408(a) to provide for his or her retirement and for the support of his or her beneficiaries after death.

The Trustee, through the Financial Institution named on the Adoption Agreement, has given the Grantor the disclosure statement required under Regulation Section 1.408-6.

The Grantor has assigned the Trust the sum indicated on the Adoption Agreement in cash.

The Grantor, the Trustee, and the Financial Institution make the following agreement:

## ARTICLE I (Contributions)

Except in the case of a rollover contribution described in Section 402(c), 403(a)(4), 403(b)(8), 408(d)(3) or 457(e)(16), an employer contribution to a simplified employee pension plan as described in Section 408(k) or a recharacterized contribution described in Section 408A(d)(6), the Trustee will accept only cash contributions up to $3,000 per year for tax years 2002 through 2004. That contribution limit is increased to $4,000 for tax years 2005 through 2007 and $5,000 for 2008 and thereafter. For individuals who have reached the age of 50 before the close of the tax year, the contribution limit is increased to $3,500 per year for tax years 2002 through 2004, $4,500 for 2005, $5,000 for 2006 and 2007, and $6,000 for 2008 and thereafter. For tax years after 2008, the above limits will be increased to reflect a cost-of-living adjustment, if any.

## ARTICLE II (Vesting)

The Grantor's interest in the balance in the Trust Account is nonforfeitable.

## ARTICLE III (Prohibited Investments)

1. No part of the Trust Account funds may be invested in life insurance contracts, nor may the assets of the Trust Account be commingled with other property except in a common trust fund or common investment fund (within the meaning of Section 408(a)(5)).

2. No part of the Trust Account funds may be invested in collectibles (within the meaning of Section 408(m)) except as otherwise permitted by Section 408(m)(3), which provides an exception for certain gold, silver, and platinum coins, coins issued under the laws of any state, and certain bullion.

## ARTICLE IV (Distributions)

1. Notwithstanding any provision of this Trust Agreement to the contrary, the distribution of the Grantor's interest in the Trust Account shall be made in accordance with the following requirements and shall otherwise comply with Section 408(a)(6) and the regulations thereunder, the provisions of which are herein incorporated by reference.

2. The Grantor's entire interest in the Trust Account must be, or begin to be, distributed not later than the Grantor's required beginning date, April 1 following the calendar year in which the Grantor reaches age 70½. By that date, the Grantor may elect, in a manner acceptable to the Trustee, to have the balance in the Trust Account distributed in:

   (a) A single sum, or

   (b) Payments over a period not longer than the life of the Grantor or the joint lives of the Grantor and his or her designated beneficiary.

3. If the Grantor dies before his or her entire interest is distributed to him or her, the remaining interest will be distributed as follows:

   (a) If the Grantor dies on or after the required beginning date and:

      (i) the designated Beneficiary is the Grantor's surviving spouse, the remaining interest will be distributed over the surviving spouse's life expectancy, as determined each year until such spouse's death, or over the period in Paragraph (a)(iii) below if longer. Any interest remaining after the spouse's death will be distributed over such spouse's remaining life expectancy as determined in the year of the spouse's death and reduced by 1 for each subsequent year, or, if distributions are being made over the period in Paragraph (a)(iii) below, over such period.

      (ii) the designated beneficiary is not the Grantor's surviving spouse, the remaining interest will be distributed over the beneficiary's remaining life expectancy as determined in the year following the death of the Grantor and reduced by 1 for each subsequent year, or over the period in Paragraph (a)(iii) below, if longer.

      (iii) there is no designated beneficiary, the remaining interest will be distributed over the remaining life expectancy of the Grantor as determined in the year of the Grantor's death and reduced by 1 for each subsequent year.

   (b) If the Grantor dies before the required beginning date, the remaining interest will be distributed in accordance with (i) below or, if elected or there is no designated beneficiary, in accordance with (ii) below:

      (i) The remaining interest will be distributed in accordance with Paragraphs (a)(i) and (a)(ii) above (but

not over the period in Paragraph (a)(iii), even if longer), starting by the end of the calendar year following the year of the Grantor's death. If, however, the designated beneficiary is the Grantor's surviving spouse, then this distribution is not required to begin before the end of the calendar year in which the Grantor would have reached age 70½. But, in such case, if the Grantor's surviving spouse dies before distributions are required to begin, then the remaining interest will be distributed in accordance with (a)(ii) above (but not over the period in Paragraph (a)(iii), even if longer), over such spouse's designated beneficiary's life expectancy, or in accordance with (ii) below if there is no such designated beneficiary.

   (ii)  The remaining interest will be distributed by the end of the calendar year containing the fifth anniversary of the Grantor's death.

4.  If the Grantor dies before his or her entire interest has been distributed and if the designated beneficiary is not the Grantor's surviving spouse, no additional contributions may be accepted in the Account.

5.  The minimum amount that must be distributed each year, beginning with the year containing the Grantor's required beginning date, is known as the "required minimum distribution" and is determined as follows:

   (a)  the required minimum distribution under Paragraph 2(b) for any year, beginning with the year the Grantor reaches age 70½, is the Grantor's account value at the close of business on December 31 of the preceding year divided by the distribution period in the Uniform Lifetime Table in Regulations Section 1.401(a)(9)-9. However, if the Grantor's designated beneficiary is his or her surviving spouse, the required minimum distribution for a year shall not be more than the Grantor's account value at the close of business on December 31 of the preceding year divided by the number in the Joint and Last Survivor Table in Regulations Section 1.401(a)(9)-9. The required minimum distribution for a year under this Paragraph (a) is determined using the Grantor's (or, if applicable, the Grantor and spouse's) attained age (or ages) in the year.

   (b)  The required minimum distribution under Paragraphs 3(a) and 3(b)(i) for a year, beginning with the year following the year of the Grantor's death (or the year the Grantor would have reached age 70½, if applicable under Paragraph 3(b)(i)) is the account value at the close of business on December 31 of the preceding year divided by the life expectancy (in the single life table in Regulations Section 1.401(a)(9)-9) of the individual specified in such Paragraphs 3(a) and 3(b)(i).

   (c)  The required minimum distribution for the year the Grantor reaches age 70½ can be made as late as April 1 of the following year. The required minimum distribution for any other year must be made by the end of such year.

6.  The owner of two or more traditional IRAs may satisfy the minimum distribution requirements described above by taking from one traditional IRA the amount required to satisfy the requirements for another in accordance with the regulations under Section 408(a)(6).

## ARTICLE V (Reporting)

1.  The Grantor (or beneficiary, if applicable) agrees to provide the Trustee with all information necessary to prepare any reports required by Section 408(i) and Regulations Sections 1.408-5 and 1.408-6.

2.  The Trustee agrees to submit to the Internal Revenue Service and the Grantor (or beneficiary, if applicable) the reports prescribed by the Internal Revenue Service.

## ARTICLE VI (Controlling Articles)

Notwithstanding any other Articles which may be added or incorporated, the provisions of Articles I through III and this sentence will be controlling. Any additional Articles inconsistent with Section 408(a) and the related Regulations will be invalid.

## ARTICLE VII (Amendments)

This Trust Agreement will be amended from time to time to comply with the provisions of the Code and the related Regulations. Other amendments may be made with the consent of the persons whose names appear below.

## ARTICLE VIII (Investments)

1.  The following definitions will apply to terms used in Article VIII and following:

   (a)  "Broker" will mean the broker named in the Brokerage Disclosure Statement, a registered broker/dealer, or its successor. The Broker may be affiliated with the Financial Institution or your Trustee or both.

   (b)  "Depository Institution" will mean the Financial Institution described in the Adoption Agreement (which may also be the Trustee in some cases) whenever such Financial Institution is acting in its capacity as a commercial bank, savings and loan association, or credit union.

   (c)  "Permissible Investment" will mean assets eligible for acquisition pursuant to Section 408 and related Regulations which are acceptable to the Trustee and which may be deposit accounts of the Trustee or purchases through a Broker.

   (d)  "Trustee" will mean Fiserv Trust Company.

   (e)  "Recordkeeper" will mean Fiserv Trust Company. As Recordkeeper, Fiserv Trust Company will serve as agent for the Trustee in order to comply with governmental reporting requirements and changes in the law, furnish reports to the Grantor, approve distribution and transfer requests, and so forth.

2.  Contributions and funds held in the Trust Account will be invested in one or more Permissible Investments as directed by the Grantor. If the Grantor elects the brokerage option, the Grantor will instruct the Broker as to such purchases and sales of assets in the Trust Account. The Grantor expressly authorizes the Trustee and the Broker to execute transactions upon his or her instructions, and neither the Trustee nor the Broker will have any responsibility to review the investment directions of the Grantor, nor will they have any liability for any loss resulting from the following of such directions. Furthermore, neither the Trustee nor the Broker will have any liability for losses resulting from the acts or omissions of the Grantor.

3. In the event that a Grantor invests in an asset which is not a Permissible Investment and is unacceptable to the Trustee or the Recordkeeper, the Trustee may give 60 days' written notice of the unacceptableness of the investment(s) purchased by the Grantor, either by mailing or actual delivery, and may seek direction from the Grantor as to the disposition of such investment. If the Grantor does not instruct the Trustee as to the disposition of the unacceptable investment within the 60 day period after notice is either mailed or given, the Trustee in its sole discretion may either liquidate the investment and invest in savings deposits at the Depository Institution or distribute such unacceptable investment to the Grantor in kind. The Grantor will be deemed to have consented to such action and accepts any tax consequences which may arise out of the Grantor's failure to invest only in Permissible Investments.

4. The Depository Institution will hold all investments of the Trust Account in the name of the Trustee (for the benefit of the Grantor) subject to all federal and applicable state statutory and regulatory provisions and the internal rules and regulations of the Trustee and the Broker.

5. Any duty or responsibility of a Grantor under this Trust Agreement, including the discretion to direct the investment of the Trust Account assets, will apply to the beneficiary or beneficiaries of the Trust Account after the death of the Grantor.

## ARTICLE IX (Statements to the Trustee and Recordkeeper)

The Grantor agrees to provide the Trustee and/or Recordkeeper with such information as they require to substantiate the Grantor's or a beneficiary's request to withdraw funds from the Trust Account in a form acceptable to the Trustee and the Recordkeeper. The Grantor authorizes the Trustee and the Depository Institution to release information to the Recordkeeper pertaining to this Trust so that the Recordkeeper may perform its duties hereunder.

## ARTICLE X (Trustee)

1. Subject to any limitations stated elsewhere in this Trust Agreement, the Trustee will have the following powers in addition to those powers held by a holder of a deposit and any other powers conferred by law:

   (a) To pay any estate, inheritance, income, or other tax, charge, or assessment attributable to any property or benefit. The Trustee, before making payment of any benefit, may require such release or documents from any lawful taxing authority and may require such indemnity from the intended payee as it considers necessary for its protection against tax liability.

   (b) To employ counsel who may be, but need not be, counsel for the Trustee individually, and the Trustee will be fully protected in acting upon the advice of such counsel.

   (c) To employ suitable agents and to delegate to them such ministerial and limited discretionary duties as the Trustee sees fit. The Financial Institution may be designated as an agent or custodian or both, and the duties delegated to it will include, but not necessarily be limited to, taking custody of the certificates or other evidence of accounts opened at the Financial Institution, maintaining accounting records, and rendering periodic statements showing the contributions, earnings, withdrawals, and

current balance of each such account or other investment. If authorized by the Financial Institution and if the Grantor has signed a separate agreement acceptable to the Trustee, at the direction of the Grantor, the Trustee may also employ any broker/dealer providing brokerage services affiliated with the Trustee or the Financial Institution and compensate such broker/dealer in accordance with its normal schedule of charges.

   (d) To perform any and all other acts in its judgment necessary or appropriate for the proper or advantageous management, investment, and distribution of the assets of this Trust.

   (e) To invest in any registered mutual fund advised by the Trustee or any affiliate.

   (f) To calculate the required mandatory distribution in Paragraph 3 of Article IV as follows: If no formal election is made by the Grantor, an election shall be deemed to have been made by the Grantor for periodic payments over the distribution period in the Uniform Lifetime Table in Regulations Section 1.401(a)(9)-9, using the Grantor's age as of his or her birthday in the year. Notwithstanding the above, if the Grantor informs the Trustee in writing on a form acceptable to the Trustee that distribution to such Grantor for any calendar year is to equal an amount less than is payable under an election or deemed election, if applicable, the Trustee shall comply with the Grantor's request. The Grantor shall be responsible for computing the amount and form of the distribution required to be paid to him or her each year from his Trust Account, for determining the date by which the amount shall be paid, and for timely providing this information to the Trustee in writing in a form acceptable to the Trustee. In the event such information is not provided, the Trustee may assume the Grantor's minimum distribution requirement for this Trust Account has been satisfied by distribution from another IRA.

2. All expenses incurred by the Trustee, the Recordkeeper, and the Broker under this Trust Agreement, including fees for legal services rendered, and such reasonable compensation to the Trustee as may be agreed upon from time to time between the Financial Institution, the Recordkeeper, and the Trustee, may be paid from the assets of this Trust and charged to the accounts of the Grantor and his or her beneficiaries in such manner and proportion as the Trustee in its discretion deems equitable.

3. The Trustee will act solely in the interest of the Grantor and his or her beneficiaries and with the care, skill, prudence, and diligence under the circumstances prevailing that a prudent person acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims. The exercise or non-exercise of any discretion, power, or duty by the Trustee in good faith and with reasonable care will be conclusive and binding on all persons. The Trustee will be fully protected in taking or failing to take any action in reliance on the written instruction of the Grantor. The Grantor agrees to hold the Trustee harmless and indemnify it from all liabilities and expenses incurred in connection with any action taken or failure to act in reliance upon the Grantor's written instructions, or in the exercise of any right, power, or duty of the Trustee in good faith and with reasonable care.

## ARTICLE XI (Resignation, Removal, or Termination of the Trust Agreement)

1. **This Trust Agreement will terminate:**

   (a) When the Trustee receives written instructions from the Grantor to transfer all of the assets of the Trust to the Trustee or Custodian of another retirement plan or trust, or directly to the Grantor;

   (b) Upon the distribution of all the assets of the Trust in accordance with Article IV or otherwise;

   (c) When the Trustee resigns from any particular Trust Agreement or all Agreements upon 30 days' written notice to the Grantor. If no response is received, this Trust Agreement will be deemed terminated as to such Grantor or all Grantors and replaced with another qualified IRA program chosen by the Trustee as the successor arrangement; or

   (d) When the Trustee is removed upon 60 days written notice from the Grantor and receives acceptance by a successor Trustee or Custodian. However, the Trustee is authorized to reserve such funds as may be necessary for the payment of expenses and fees due or to be incurred.

2. Unless one of the events described in Paragraph 1 occurs, this Trust Agreement will continue even though no contributions are made to the Trust Account for any particular year or years.

3. **Upon termination of this Trust:**

   (a) The Trustee will continue to have all of the powers provided in this Trust Agreement that are necessary or desirable for the orderly liquidation and distribution of the Trust assets, and will be entitled to reserve such amounts as it may deem advisable to provide for the payment of any expenses and fees then or thereafter chargeable to the Trust.

   (b) The successor Trustee or Custodian will have all the rights, powers, privileges, liabilities, and duties of the former Trustee. Upon acceptance of appointment by the successor Trustee or Custodian, the former Trustee will assign, transfer, and deliver to the successor Trustee or Custodian all funds and savings accounts to which such resignation or removal relates.

## ARTICLE XII (Designation of Beneficiary)

1. The Grantor will file with the Trustee a written designation of his or her beneficiary or beneficiaries. Any such designation may be changed from time to time by filing a new designation with the Trustee. Such designation may include contingent or successive beneficiaries. Each such election and designation will be on a form provided by or acceptable to the Trustee. Except as provided in Paragraph 3 below, the interest of any beneficiary will cease upon his or her death. Except as provided in Paragraph 3 below, if there is no designated beneficiary to receive any amount which becomes payable to a beneficiary, such amount will be payable first to the spouse of the Grantor and if there is no spouse surviving, to the estate of the Grantor. A beneficiary designation dated and signed by the Grantor will be valid even though not filed with the Trustee prior to the death of the Grantor if it is filed before the Trustee has made payments to a beneficiary pursuant to the written designation then on file with the Trustee. If payments are made after the death of the Grantor pursuant to the written designation then filed with the Trustee bearing the latest date, the Trustee will not be subject to any liability for failure to make payments pursuant to any other designation.

2. Upon the death of the primary beneficiary named by the Grantor, the contingent beneficiary named by the Grantor shall become entitled to any remaining death benefits under this Trust Account regardless of whether the primary beneficiary survived the Grantor and regardless of whether death benefit payments had commenced to the primary beneficiary. If more than one beneficiary has been named in either the primary or contingent class of beneficiary, then any death benefits payable to such class shall be paid pro rata to beneficiaries within the class unless the Grantor specified otherwise at the time such beneficiaries were named. Upon the death of one or more designated beneficiaries within a class, the beneficiaries of that class living at the time of distribution shall share pro rata any death benefits payable to such class, unless the Grantor specified otherwise.

3. The right of a beneficiary to designate his or her own beneficiary for the Trust Account is limited as follows:

   (a) A designated beneficiary shall not have the right to designate a beneficiary or beneficiaries to receive the balance, if any, of the Grantor's Trust Account upon the death of such designated beneficiary, except in the event the Grantor's sole designated beneficiary is the Grantor's spouse, as described in Paragraph 3(b) below.

   (b) If the Grantor's sole designated beneficiary is the Grantor's spouse, and the spouse survives the Grantor, the surviving spouse may designate a beneficiary to whom the Trustee shall pay the surviving spouse's interest upon the death of the surviving spouse. If the surviving spouse who is the sole designated beneficiary does name a beneficiary, any contingent or other beneficiary named by the deceased Grantor will be disregarded, and any amounts unpaid upon the death of the surviving spouse will be paid to the beneficiaries named by the surviving spouse. If the surviving spouse, who is the sole designated beneficiary, has not named a beneficiary, any amounts unpaid upon the death of the surviving spouse will be paid to the Grantor's contingent or other beneficiary named by the deceased Grantor or as provided under this IRA. However, if the Grantor's spouse is the only beneficiary (including contingent or other beneficiaries) named by the Grantor, and the spouse survives the Grantor, and the surviving spouse dies without naming a beneficiary, the surviving spouse's beneficiary shall be deemed to be the spouse of the surviving spouse (if legally married to the surviving spouse on the date of death and if living on the date of distribution), or, if no such spouse, the estate of the surviving spouse.

   (c) A deemed beneficiary under this Article XII will not be treated as a "designated beneficiary" for purposes of determining the minimum required distributions for the Trust Account.

4. If the Participant's surviving spouse is the sole designated Beneficiary, after the death of the Participant, the spouse may elect to treat the Account as the IRA of the surviving spouse. This election will be made upon written notice to the Trustee, using a form acceptable to the Trustee, and may be

made at any time after the Participant's death. In such event, the assets of the deceased Participant's Account will be moved to an IRA in the name of the surviving spouse, rather than the surviving spouse maintaining an interest in the deceased Participant's Account as a Beneficiary. Alternatively, this election will be deemed to have been made if the surviving spouse makes a contribution to the Account of the deceased Participant or fails to take minimum required distributions as a Beneficiary.

5.  The Trustee is under no obligation to distribute funds if the Trustee has been given written notice that a beneficiary dispute exists. In this case, the Trustee may make payment after receiving either written payout instructions containing witnessed signatures of all parties to the beneficiary dispute, or an order from a court of competent jurisdiction.

6.  Neither the Grantor nor any beneficiary of the Grantor will have any right to pledge, borrow against, or in any way create a lien upon any assets or part of the Trust. Distribution to the Grantor, his or her beneficiaries, spouse, heirs-at-law or legal representatives, excepting minors and persons under legal disability, will be made only to them and upon their personal receipts or endorsements and no interest in the Trust, or any part thereof, will be assignable in anticipation of payment either by involuntary act, or by operation of law, or be liable in any way for the debts and defaults of such Grantor, his or her beneficiaries, spouse, or heirs-at-law. The provisions of this paragraph will not apply to the extent that they violate any applicable law. Notwithstanding the provisions of this Paragraph, the Grantor may transfer part or all of his or her interest in the Trust Account to his or her former spouse pursuant to a divorce decree or under a written instrument incident to such divorce, including a separation agreement, and any interest so transferred will be treated as an individual retirement account for the benefit of the former spouse.

7.  If no formal election is made by the beneficiary, an election shall be deemed to have been made by a spouse beneficiary for periodic payments under Article IV, Paragraph 3(b)(i) above and by a nonspouse beneficiary for payment under Article IV, Paragraph 3(b)(ii) above. Notwithstanding the above, if the beneficiary informs the Trustee in writing on a form acceptable to the Trustee that distribution to such beneficiary for any calendar year is to equal an amount less than is payable under an election or deemed election, if applicable, the Trustee shall comply with the beneficiary's request. The beneficiary shall be responsible for computing the amount and form of the distribution required to be paid to him each year from his Trust Account, for determining the date by which the amount shall be paid, and for timely providing this information to the Trustee in writing in a form acceptable to the Trustee.

8.  Separate subaccounts may be established by the beneficiaries for one or more beneficiaries. In order to determine distribution periods under Article IV with respect to each separate subaccount, such subaccount must be established no later than the end of the year following the year of the Grantor's death. To the extent that one or more subaccounts are established by the Trustee under the Trust Account as directed by a beneficiary, any investment income or losses on the assets in each subaccount will be allocated directly to such subaccount (subaccount income/losses will not be allocated to different subaccounts).

9.  Any beneficiary who currently is not receiving distributions of the Grantor's Trust Account based on the beneficiary's life expectancy (so that distribution of the entire Trust Account would be required under the five-year rule set forth in Article IV, Paragraph (b)(3) above) may switch to using the beneficiary's life expectancy as the distribution period so long as the amounts that would have been distributed to the beneficiary based on the beneficiary's life expectancy for all years after the Grantor's death are distributed to the beneficiary no later than December 31, 2003, or, if earlier, the expiration of the five-year period.

## ARTICLE XIII (Miscellaneous)

1.  The Trustee shall have no obligation or responsibility with respect to any act of, or failure to act, on the part of a Participant or his duly authorized agent, or, if the Participant is deceased, on the part of the Beneficiary or his duly authorized agent.

    The Trustee is not required to determine the correctness of the amount of any Participant contribution, nor is either required to determine whether a Participant's rollover contribution satisfies the definition of Qualifying Rollover Contribution. The Trustee or the Participant or the Beneficiary may waive any notice required to be received by it under this Plan, and, in the case of any written notice or election required under this Plan, the Trustee may accept such notice or election in any form (including electronically) approved by the Trustee for such notice or election.

2.  The Trustee does not, in any way, guarantee the Trust from loss or depreciation. The liability of the Trustee to make any payment from the Trust at any time and all times is limited to the then-available assets of the Trust.

3.  The Participant, and, upon the death of the Participant, the Beneficiary (hereinafter, "Participant"), agrees to indemnify and hold harmless the Trustee and Sponsor (hereinafter, "Trustee") from and against all losses, expenses, settlement, payments, or judgments incurred by, or entered against, the Trustee as the result of any threatened or asserted claim against the Trustee that pertains in any way to: (1) the Trustee's activities with the Participant; (2) the Participant's investments; and/or (3) a situation or matter associated with this Trust or Plan. The Participant's indemnification obligation also includes the responsibility to reimburse the Trustee for all attorney's fees and costs incurred by the Trustee in: (1) responding to threatened claims by any party; (2) defending (including on appeal) against asserted claims by any party; and/or (3) prosecuting (including on appeal) a claim or counterclaim against the Participant requesting payment of the indemnification obligation set forth herein. The Participant's indemnification obligation applies to any threatened or asserted claim against the Trustee, including specifically a claim that is threatened or asserted by the Participant against the Trustee. The Participant's indemnification obligation hereunder also applies to any threatened or asserted claims brought by the Participant against the Trustee resulting from wrongful conduct by the Participant's Financial Representative (or other agent of the Participant), including, but not limited to, fraud, forgery, or any other illegal act engaged in by the Financial Representative or other agent retained by the Participant.

4.  No amendments or modification or termination of this Trust Agreement will cause any part of the Trust Account to be used for or diverted to or for the benefit of anyone other than the Grantor and his or her beneficiaries; furthermore, the

rights, duties, or responsibilities of the Trustee will not be changed without its written consent.

5. In the event the Trustee wishes to amend this Trust Agreement or offer it to newly acquired customers as substitution for an existing qualified IRA program, the Trustee may do so by notifying such Grantor or customers of the amendment or substitution and by giving them a reasonable period of time in which to respond. If no response is received within the time period stated, such Grantor or customer will be deemed to have consented to the amendment or to have adopted the provisions of this Trust Agreement and to be bound by them.

6. In the event the Trustee wishes to amend this Trust Agreement to permit automatic rollovers under Section 401 (a)(31)(B) of the Internal Revenue Code, the Trustee may do so by notifying such Grantor or Customers of its intention to allow such automatic rollovers.

7. In interpreting this Agreement, words in the masculine gender will include the feminine, words in the singular will include the plural and vice versa, as may be appropriate. The word person will include natural and legal persons.

8. Any notice or statement which the Trustee or Recordkeeper is required to give hereafter will be deemed given when mailed to the intended recipient at his or her last known address. Any notice or statement to be given to the Trustee or Recordkeeper will be deemed given only when actually received by the Trustee or Recordkeeper.

9. Titles are provided herein for convenience only and are not to serve as a basis for interpretation or construction of the Trust Agreement.

10. Any provision of this Plan and Trust Agreement, or of a participant's Adoption Agreement, shall be wholly invalid if it is inconsistent, in whole or in part, with Code Section 408(a) and 408A and the regulations under those Code sections. This Plan shall be governed by and construed, administered, and enforced according to the laws of the state in which is located the Trustee's principal place of business except to the extend preempted by the Federal law.

11. The Plan shall be binding upon all persons entitled to benefits under this Plan, their respective heirs and legal representatives, and upon the Trustee and its successors.

12. This Agreement may be executed in any number of counterparts, each of which will be considered as an original, and no other counterparts need to be produced. In no event will this Agreement be of any binding effect until executed by the Trustee.

**IN WITNESS WHEREOF, the Trustee has executed this Trust Agreement.**

# SEP IRA – Questions and Answers for Employers

## What is a SEP?

A Simplified Employee Pension plan (SEP) is the simplest form of an employer-sponsored retirement plan. It provides the small business owner with a low-cost alternative to a qualified profit sharing plan. With the SEP, an employer can help his employees save for retirement while securing immediate tax savings on the contribution he makes.

## What are the benefits of a SEP?

Because the SEP combines the advantages of a qualified plan with the simplicity of an IRA, the benefits are many:

- **It's simple.** Because of the way the SEP is designed, the employer has no complicated reporting requirements. Each employee establishes his own IRA to receive the SEP contributions, selects his own IRA custodian, and chooses his own investments, thereby relieving the employer of administrative responsibilities.

- **It's low cost.** Each employee maintains his own IRA to hold SEP contributions, so the employer avoids hefty maintenance fees that traditional business retirement plans often incur.

- **It's tax deductible.** The employer is permitted (but not required) to contribute on behalf of each employee an amount up to the lesser of 25% of the employee's compensation or $41,000, whichever is less. The employee's annual compensation is capped at $205,000. Earnings accumulate tax-deferred until withdrawn. Contribution and compensation limits are indexed each year for COLA increases.

## How does a SEP work?

Once the employee's IRA is established, the employer can make SEP contributions directly to the SEP. There are no special distribution rules and no extra reporting requirements. The employer simply records the total amount contributed to the SEP for the year on his business tax return. SEP contributions are not included in the employee's income and, therefore, are not reported or deducted by the employee on his tax return.

## Who may establish a SEP?

Any incorporated or unincorporated business, partnership, or a self-employed individual can have a SEP.

## How do I establish a SEP?

You can open a SEP in two easy steps:

1. The employer completes Internal Revenue Service (IRS) Form 5305-SEP. The employer gives a copy of IRS Form 5305-SEP to each eligible employee and keeps the original. Form 5305-SEP outlines the terms and conditions of the employer's SEP.

2. Each eligible employee, or the employer on behalf of the employee, completes a Traditional IRA Adoption Agreement and Designation of Beneficiary form to establish an IRA. A SEP may hold both personal IRA and SEP contributions; there is no need to open two IRAs. The financial institution may redesignate an existing Traditional IRA of an employee as a SEP.

## When is the employer's deadline for establishing and contributing to a SEP?

The deadline for establishing a SEP is the employer's business tax filing deadline (plus extensions). This is also the deadline for making contributions to the SEP. Contributions made by the Employer will be reported to the IRS (on the employee's Form 5498) in the year they are made. The employer reports the contribution on its annual tax return for the tax year it wants it to be credited.

## Must all employees be included?

The employer establishes the eligibility requirements. However, the requirements set by the employer cannot exceed the maximum requirements established by the IRS. The maximum requirements allowed by the IRS are:

- are at least 21 years old;

- have earned at least $450 (for 2002, indexed for inflation) during the year for which the contribution is made; and

- has received compensation for up to three of the five prior years as determined in the Adoption Agreement.

The employer discloses the terms and conditions of their SEP by completing IRS Form 5305-SEP and providing a copy to each eligible employee.

## What do I tell my employees about the SEP?

The employer must give each employee a copy of the completed IRS Form 5305-SEP when he sets up the plan.

# Notice to Adopting Employer

A simplified employee pension plan ("SEP") is a plan that provides you with a simplified way to enhance your employees' retirement income.

## I. Making the Agreement

This SEP agreement is considered made when:

A. The employer has completed IRS Form 5305-SEP and provided a copy to all eligible employees.

## II. Deductibility of Contributions

You, as the employer, may deduct, subject to applicable limits, those contributions made to a SEP. Contributions made for a particular tax year and contributed by the due date of your income tax return, including extensions, are deemed made in that taxable year. The trustee of the SEP, however, reports the contribution on each employee's annual IRS Form 5498 for the calendar year it was made.

## III. SEP Contribution Limits

A. Contributions to all SEP plans for a plan year may not exceed the lesser of $41,000 or 25% of compensation for any employee.

## IV. Excess SEP Contributions—Tax Consequences and Notification of Employees

You are responsible for notifying each affected employee, if any, within 2½ months following the end of the plan year, of the amount of excess SEP contributions to that employee's SEP. Such excess SEP contributions are includible in the employee's gross income in the calendar year the contribution was made. However, if the excess SEP contributions total less than $100, then the excess contributions are includible in the employee's gross income in the calendar year of notification. Income allocable to the excess SEP contributions is includible in gross income in the year of withdrawal from the IRA.

If you fail to notify any of your affected employees within 2½ months following the end of the plan year of an excess SEP contribution, you must pay a tax equal to 10% of the excess SEP contribution. If you fail to notify your employees by the end of the plan year following the plan year in which the excess SEP contributions arose, the SEP no longer will be considered to meet the requirements of Section 408(k)(6) of the Code. If the SEP no longer meets the requirements of Section 408(k)(6), then any contribution to an employee's IRA will be subject to the IRA contribution limitations of Sections 219 and 408 of the Code, and thus may be considered an excess contribution to the employee's IRA.

Your notification to each affected employee of the excess SEP contributions must specifically state in a manner calculated to be understood by the average employee:

A. The amount of the excess SEP contribution;

B. The calendar year in which the excess SEP contribution is includible in gross income; and

C. That the employee must withdraw the excess SEP contributions (and net income attributable) from the SEP by April 15 following the calendar year of notification by the

employer. Any excess contribution not withdrawn by April 15 following the year of notification will be subject to the IRA contribution limitations of Sections 219 and 408 of the Code for the preceding calendar year and thus may be considered an excess contribution to the employee's IRA. Such excess contributions may be subject to the six percent tax on excess contributions under Section 4973. If the net income attributable to an excess SEP contribution is not withdrawn by April 15 following the calendar year of notification by the employer, the income may be subject to the ten percent tax on early distributions under Section 72(t) when withdrawn.

For information on reporting excess SEP contributions, see *Notice 87-77, 1987-2 C.B. 385*, and *Notice 88-33, 1988-1 C.B. 513*, as modified by *Notice 89-32, 1989-1 C.B. 671*.

## V. For More Information

This Notice is provided for informational purposes only and is not intended to be a complete guide for every employer or situation. Please refer to *IRS Publications 590* and *560* for specific information regarding SEPs.

Form **5305-SEP**

(Rev. March 2002)

Department of the Treasury
Internal Revenue Service

**Simplified Employee Pension—Individual Retirement Accounts Contribution Agreement**

(Under section 408(k) of the Internal Revenue Code)

OMB No. 1545-0499

**Do not file**
with the Internal
Revenue Service

_____ makes the following agreement under section 408(k) of the
(Name of employer)                Internal Revenue Code and the instructions to this form.

### Article I—Eligibility Requirements (check applicable boxes—see instructions)

The employer agrees to provide discretionary contributions in each calendar year to the individual retirement account or individual retirement annuity (IRA) of all employees who are at least _____ years old (not to exceed 21 years old) and have performed services for the employer in at least _____ years (not to exceed 3 years) of the immediately preceding 5 years. This simplified employee pension (SEP) ☐ includes ☐ **does not** include employees covered under a collective bargaining agreement, ☐ includes ☐ **does not** include certain nonresident aliens, and ☐ includes ☐ **does not** include employees whose total compensation during the year is less than $450*.

### Article II—SEP Requirements (see instructions)

The employer agrees that contributions made on behalf of each eligible employee will be:

**A.**   Based only on the first $200,000* of compensation.

**B.**   The same percentage of compensation for every employee.

**C.**   Limited annually to the smaller of $40,000* or 25% of compensation.

**D.**   Paid to the employee's IRA trustee, custodian, or insurance company (for an annuity contract).

_____          _____
Employer's signature and date                                            Name and title

## Instructions

*Section references are to the Internal Revenue Code unless otherwise noted.*

### Purpose of Form

Form 5305-SEP (Model SEP) is used by an employer to make an agreement to provide benefits to all eligible employees under a simplified employee pension (SEP) described in section 408(k).

**Do not** file Form 5305-SEP with the IRS. Instead, keep it with your records.

For more information on SEPs and IRAs, see **Pub. 560**, Retirement Plans for Small Business (SEP, SIMPLE, and Qualified Plans), and **Pub. 590**, Individual Retirement Arrangements (IRAs).

### Instructions to the Employer

**Simplified employee pension.** A SEP is a written arrangement (a plan) that provides you with an easy way to make contributions toward your employees' retirement income. Under a SEP, you can contribute to an employee's traditional individual retirement account or annuity (traditional IRA). You make contributions directly to an IRA set up by or for each employee with a bank, insurance company, or other qualified financial institution. When using Form 5305-SEP to establish a SEP, the IRA must be a Model traditional IRA established on an IRS form or a master or prototype traditional IRA for which the IRS has issued a favorable opinion letter. You may **not** make SEP contributions to a Roth IRA or a SIMPLE IRA. Making the agreement on Form 5305-SEP does not establish an employer IRA described in section 408(c).

**When not to use Form 5305-SEP.** Do not use this form if you:

**1.** Currently maintain any other qualified retirement plan. This does not prevent you from maintaining another SEP.

**2.** Have any eligible employees for whom IRAs have not been established.

**3.** Use the services of leased employees (described in section 414(n)).

**4.** Are a member of an affiliated service group (described in section 414(m)), a controlled group of corporations (described in section 414(b)), or trades or businesses under common control (described in sections 414(c) and 414(o)), unless all eligible employees of all the members of such groups, trades, or businesses participate in the SEP.

**5.** Will not pay the cost of the SEP contributions. Do not use Form 5305-SEP for a SEP that provides for elective contributions even if the contributions are made under a salary reduction agreement. Use Form 5305A-SEP, or a nonmodel SEP.

**Note:** *SEPs permitting elective deferrals cannot be established after 1996.*

**Eligible employees.** All eligible employees must be allowed to participate in the SEP. An eligible employee is any employee who: **(1)** is at least 21 years old, and **(2)** has performed "service" for you in at least 3 of the immediately preceding 5 years. You can establish less restrictive eligibility requirements, but not more restrictive ones.

Service is any work performed for you for any period of time, however short. If you are a member of an affiliated service group, a controlled group of corporations, or trades or businesses under common control, service includes any work performed for any period of time for any other member of such group, trades, or businesses.

**Excludable employees.** The following employees do not have to be covered by the SEP: **(1)** employees covered by a collective bargaining agreement whose retirement benefits were bargained for in good faith by you and their union, **(2)** nonresident alien employees who did not earn U.S. source income from you, and **(3)** employees who received less than $450* in compensation during the year.

**Contribution limits.** You may make an annual contribution of up to 25% of the employee's compensation or $40,000*, whichever is less. Compensation, for this purpose, does not include employer contributions to the SEP or the employee's compensation in excess of $200,000*. If you also maintain a salary reduction SEP, contributions to the two SEPs together may not exceed the smaller of $40,000* or 25% of compensation for any employee.

You are not required to make contributions every year, but when you do, you must contribute to the SEP-IRAs of all eligible employees who actually performed services during the year of the contribution. This includes eligible employees who die or quit working before the contribution is made.

Contributions cannot discriminate in favor of highly compensated employees. Also, you may not integrate your SEP contributions with, or offset them by, contributions made under the Federal Insurance Contributions Act (FICA).

If this SEP is intended to meet the top-heavy minimum contribution rules of section 416, but it does not cover all your employees who participate in your salary reduction SEP, then you must make minimum contributions to IRAs established on behalf of those employees.

**Deducting contributions.** You may deduct contributions to a SEP subject to the limits of section 404(h). This SEP is maintained on a calendar year basis and contributions to the SEP are deductible for your tax year with or

* For 2003 and later years, this amount is subject to annual cost-of-living adjustments. The IRS announces the increase, if any, in a news release, in the Internal Revenue Bulletin, and on the IRS Web Site at **www.irs.gov.**

For Paperwork Reduction Act Notice, see page 2.          Cat. No. 11825J          Form **5305-SEP** (Rev. 3-2002)

© Fiserv Trust Company, 2005

within which the calendar year ends. Contributions made for a particular tax year must be made by the due date of your income tax return (including extensions) for that tax year.

**Completing the agreement.** This agreement is considered adopted when:

● IRAs have been established for all your eligible employees;

● You have completed all blanks on the agreement form without modification; and

● You have given all your eligible employees the following information:

1. A copy of Form 5305-SEP.

2. A statement that traditional IRAs other than the traditional IRAs into which employer SEP contributions will be made may provide different rates of return and different terms concerning, among other things, transfers and withdrawals of funds from the IRAs.

3. A statement that, in addition to the information provided to an employee at the time the employee becomes eligible to participate, the administrator of the SEP must furnish each participant within 30 days of the effective date of any amendment to the SEP, a copy of the amendment and a written explanation of its effects.

4. A statement that the administrator will give written notification to each participant of any employer contributions made under the SEP to that participant's IRA by the later of January 31 of the year following the year for which a contribution is made or 30 days after the contribution is made.

Employers who have established a SEP using Form 5305-SEP and have furnished each eligible employee with a copy of the completed Form 5305-SEP and provided the other documents and disclosures described in **Instructions to the Employer** and **Information for the Employee**, are not required to file the annual information returns, Forms 5500 or 5500-EZ for the SEP. However, under Title I of the Employee Retirement Income Security Act of 1974 (ERISA), this relief from the annual reporting requirements may not be available to an employer who selects, recommends, or influences its employees to choose IRAs into which contributions will be made under the SEP, if those IRAs are subject to provisions that impose any limits on a participant's ability to withdraw funds (other than restrictions imposed by the Code that apply to all IRAs). For additional information on Title I requirements, see the Department of Labor regulation at 29 CFR 2520.104-48.

## Information for the Employee

The information below explains what a SEP is, how contributions are made, and how to treat your employer's contributions for tax purposes. For more information, see Pub. 590.

**Simplified employee pension.** A SEP is a written arrangement (a plan) that allows an employer to make contributions toward your retirement. Contributions are made to a traditional individual retirement account/annuity (traditional IRA). Contributions must be made to either a Model traditional IRA executed on an IRS form or a master or prototype traditional IRA for which the IRS has issued a favorable opinion letter.

An employer is not required to make SEP contributions. If a contribution is made, however, it must be allocated to all eligible employees according to the SEP agreement. The Model SEP (Form 5305-SEP) specifies that the contribution for each eligible employee will be the same percentage of compensation (excluding compensation greater than $200,000*) for all employees.

Your employer will provide you with a copy of the agreement containing participation rules and a description of how employer contributions may be made to your IRA. Your employer must also provide you with a copy of the completed Form 5305-SEP and a yearly statement showing any contributions to your IRA.

All amounts contributed to your IRA by your employer belong to you even after you stop working for that employer.

**Contribution limits.** Your employer will determine the amount to be contributed to your IRA each year. However, the amount for any year is limited to the smaller of $40,000* or 25% of your compensation for that year. Compensation does not include any amount that is contributed by your employer to your IRA under the SEP. Your employer is not required to make contributions every year or to maintain a particular level of contributions.

**Tax treatment of contributions.** Employer contributions to your SEP-IRA are excluded from your income unless there are contributions in excess of the applicable limit. Employer contributions within these limits will not be included on your Form W-2.

**Employee contributions.** You may make regular IRA contributions to an IRA. However, the amount you can deduct may be reduced or eliminated because, as a participant in a SEP, you are covered by an employer retirement plan.

**SEP participation.** If your employer does not require you to participate in a SEP as a condition of employment, and you elect not to participate, all other employees of your employer may be prohibited from participating. If one or more eligible employees do not participate and the employer tries to establish a SEP for the remaining employees, it could cause adverse tax consequences for the participating employees.

An employer may not adopt this IRS Model SEP if the employer maintains another qualified retirement plan. This does not prevent your employer from adopting this IRS Model SEP and also maintaining an IRS Model Salary Reduction SEP or other SEP. However, if you work for several employers, you may be covered by a SEP of one employer and a different SEP or pension or profit-sharing plan of another employer.

**SEP-IRA amounts—rollover or transfer to another IRA.** You can withdraw or receive funds from your SEP-IRA, if, within 60 days of receipt, you place those funds in the same or another IRA. This is called a "rollover" and can be done without penalty only once in any 1-year period. However, there are no restrictions on the number of times you may make "transfers" if you arrange to have these funds transferred between the trustees or the custodians so that you never have possession of the funds.

**Withdrawals.** You may withdraw your employer's contribution at any time, but any amount withdrawn is includible in your income unless rolled over. Also, if withdrawals

occur before you reach age 59½, you may be subject to a tax on early withdrawal.

**Excess SEP contributions.** Contributions exceeding the yearly limitations may be withdrawn without penalty by the due date (plus extensions) for filing your tax return (normally April 15), but are includible in your gross income. Excess contributions left in your SEP-IRA after that time may have adverse tax consequences. Withdrawals of those contributions may be taxed as premature withdrawals.

**Financial institution requirements.** The financial institution where your IRA is maintained must provide you with a disclosure statement that contains the following information in plain, nontechnical language:

1. The law that relates to your IRA.

2. The tax consequences of various options concerning your IRA.

3. Participation eligibility rules, and rules on the deductibility of retirement savings.

4. Situations and procedures for revoking your IRA, including the name, address, and telephone number of the person designated to receive notice of revocation. This information must be clearly displayed at the beginning of the disclosure statement.

5. A discussion of the penalties that may be assessed because of prohibited activities concerning your IRA.

6. Financial disclosure that provides the following information:

**a.** Projects value growth rates of your IRA under various contribution and retirement schedules, or describes the method of determining annual earnings and charges that may be assessed.

**b.** Describes whether, and for when, the growth projections are guaranteed, or a statement of the earnings rate and the terms on which the projections are based.

**c.** States the sales commission for each year expressed as a percentage of $1,000.

In addition, the financial institution must provide you with a financial statement each year. You may want to keep these statements to evaluate your IRA's investment performance.

**Paperwork Reduction Act Notice.** You are not required to provide the information requested on a form that is subject to the Paperwork Reduction Act unless the form displays a valid OMB control number. Books or records relating to a form or its instructions must be retained as long as their contents may become material in the administration of any Internal Revenue law. Generally, tax returns and return information are confidential, as required by section 6103.

The time needed to complete this form will vary depending on individual circumstances. The estimated average time is:

| | |
|---|---|
| Recordkeeping | 1 hr., 40 min. |
| Learning about the law or the form | 1 hr., 35 min. |
| Preparing the form | 1 hr., 41 min. |

If you have comments concerning the accuracy of these time estimates or suggestions for making this form simpler, we would be happy to hear from you. You can write to the Tax Forms Committee, Western Area Distribution Center, Rancho Cordova, CA 95743-0001. **Do not** send this form to this address. Instead, keep it with your records.



# SEP IRA – Questions and Answers for Employees

## INFORMATION FOR THE EMPLOYEE

The information provided below explains what a Simplified Employee Pension (SEP) plan is, how contributions are made, and how to treat your employer's contributions for tax purposes. Please read the questions and answer carefully. For more specific information, see *IRS Publications 590* and *560* and review the completed IRS Form 5305-SEP provided by your employer.

# QUESTIONS & ANSWERS

### Q1  What is a Simplified Employee Pension, or SEP?

A SEP is a written arrangement (a plan) that allows an employer to make contributions toward your retirement. Contributions are made to a Traditional Individual Retirement Arrangement (IRA).

Your employer will provide you with a copy of the completed IRS Form 5305-SEP, containing participation rules and a description of how employer contributions may be made to your IRA.

All amounts contributed to your IRA by your employer belong to you even after you stop working for that employer.

### Q2  Must my employer contribute to my IRA under the SEP?

No. An employer is not required to make SEP contributions. If a contribution is made, it must be allocated to all the eligible employees according to the SEP agreement.

### Q3  How much may my employer contribute to my SEP-IRA in any year?

Your employer will determine the amount to be contributed to your IRA each year. However, the amount for any year is limited to the smaller of $42,000 or 25% of your compensation for that year (these amounts are indexed each year for COLA adjustments). Your compensation does not include any amount that is contributed by your employer to your IRA under the SEP. Your employer is not required to make contributions every year or to maintain a particular level of contributions. See Question 5.

### Q4  How do I treat my employer's SEP contributions for my taxes?

Employer contributions to your SEP-IRA are excluded from your income unless there are contributions in excess of the applicable limit. See Question 3. Employer contributions within these limits are not considered compensation and will not be included on your Form W-2.

### Q5  May I also contribute to my IRA if I am a participant in a SEP?

Yes. You may contribute the smaller of $3,000 or 100% of your compensation to an IRA. However, the amount you can deduct may be reduced or eliminated because, as a participant in a SEP, you are covered by an employer retirement plan. See Question 11. You may also qualify for a $500 catch-up contribution if you are over the age of 50.

### Q6  Are there any restrictions on the IRA I select to have my SEP contributions deposited in?

Contributions must be made to either a Model Traditional IRA executed on an IRS form or a master or prototype Traditional IRA for which the IRS has issued a favorable opinion letter.

### Q7  What if I do not want to participate in a SEP?

If your employer does not require you to participate in a SEP as a condition of employment, and you elect not to participate, all other employees of your employer may be prohibited from participating. If one or more eligible employees do not participate and the employer tries to establish a SEP for the remaining employees, it could cause adverse tax consequences for the participating employees.

### Q8  Can I move funds from my SEP to another tax-sheltered IRA?

Yes. You can withdraw or receive funds from your SEP if within 60 days of receipt, you place those funds in another traditional IRA or SEP. This is called a "rollover" and can be done without penalty only once in any 12-month period. However, there are no restrictions on the number of times you may make "transfers" if you arrange to have these funds transferred between the trustees or the custodians so that you never have possession of the funds.

### Q9  What happens if I withdraw my employer's contribution from my SEP?

You may withdraw your employer's contribution at any time, but any amount withdrawn is includible in your earned income unless rolled over or transferred to another Traditional IRA . Also, if withdrawals occur before you reach age 59½, you may be subject to a tax on early withdrawal.

### Q10  May I participate in a SEP even though I am covered by another plan?

An employer **cannot** adopt a SEP using IRS Form 5305-SEP in conjunction with a qualified plan, including a defined benefit plan. However, if you work for several employers you may be covered by a SEP of one employer and a different SEP or pension or profit sharing plan of another employer.

### Q11  What happens if too much is contributed to my SEP in one year?

Contributions exceeding the yearly limitations may be withdrawn without penalty by the due date (plus extensions) for filing your tax return (normally April 15) but is includible in your earned income. You must also withdraw the Net Income Attributable to the contribution. Excess contributions left in your SEP after that time may have adverse tax consequences. Withdrawals of those contributions may be taxed as premature withdrawals. See Question 9.

### Q12  Is my employer required to provide me with information about SEPs and the SEP agreement?

Yes. Your employer must provide you with a copy of the completed IRS Form 5305-SEP and a yearly statement showing any contributions to your IRA.

*(Continued on next page.)*

Case 1:07-bk-10312-GM    Doc 66    Filed 07/18/07    Entered 07/19/07 12:07:57    Desc
SEP IRA – Questions and    3    Main Document    Page 37 of 43
Answers for Employees (continued)

**Q13  Is the financial institution where my IRA is established required to provide me with information?**

Yes. It must provide you with a Traditional IRA Disclosure Statement and Trust Agreement booklet that contains the following information in plain, nontechnical language.

(1) The law that relates to your IRA.

(2) The tax consequences of various options concerning your IRA.

(3) Participation eligibility rules, and rules on the deductibility of retirement savings.

(4) Situations and procedures for revoking your IRA, including the name, address, and telephone number of the person designated to receive notice of revocation. (This information must be clearly displayed at the beginning of the disclosure statement.)

(5) A discussion of the penalties that may be assessed because of prohibited activities concerning your IRA.

(6) Financial disclosure that provides the following information:

    (a) Projects value growth rates of your IRA under various contribution and retirement schedules, or describes the method of determining annual earnings and charges that may be assessed.

    (b) Describes whether, and for when, the growth projections are guaranteed, or a statement of the earnings rate and the terms on which the projections are based.

    (c) States the sales commission for each year expressed as a percentage of $1,000.

In addition to this disclosure statement, the financial institution is required to provide you with a financial statement each year. It may be necessary to retain and refer to statements for more than one year in order to evaluate the investment performance of the IRA and in order that you will know how to report IRA distributions for tax purposes.

See *IRS Publication 590*, "Individual Retirement Arrangements (IRAs)", available at most IRS offices, for a more complete explanation of the disclosure requirements.

# Notice for the Employees

The following information explains what a simplified employee pension plan ("SEP") is, how contributions are made, and how to treat these contributions for tax purposes. For more specific information, refer to the completed IRS Form 5305-SEP given to you by your employer.

## I. Simplified Employee Pension–Defined

A SEP is a retirement income arrangement.

Your employer must provide you with a copy of the completed IRS Form 5305-SEP containing eligibility requirements and a description of the basis upon which contributions may be made.

All amounts contributed to your IRA belong to you, even after you quit working for your employer.

## II. Additional Top-Heavy Contributions

If you are not a "key employee," your employer must make an additional contribution to your SEP for a year in which the SEP is considered "top-heavy." (Your employer will be able to tell you whether you are a key employee.) This additional contribution will not exceed three percent of your compensation. It may be less if your employer has already made a contribution to your account, and for certain other reasons.

## III. Excess SEP Contributions–How To Avoid Adverse Tax Consequences

Your employer should notify you of any excess SEP contributions within 2½ months after the end of the plan year. Generally you must include the excess SEP contributions as earned income for the calendar year in which the original contribution was made. This may require you to file an amended individual income tax return. However, any excess SEP contribution of less than $100 (not including earnings) is includible in the calendar year of notification. Net Income Attributable on the excess contribution is includible in your earned income when you withdraw it from your IRA.

You are responsible for withdrawing the excess SEP contribution and Net Income Attributable from your IRA. You may withdraw these amounts without penalty until April 15 following the calendar year in which you were notified by your employer of the excess SEP contributions.

If you fail to withdraw the excess SEP contributions by April 15 following the calendar year of notification, the excess SEP contributions will be subject to the IRA contribution limitations of Sections 219 and 408 of the Code and thus may be considered an excess contribution to your IRA. Thus, such excess SEP contributions may be subject to a six percent excise tax for each year they remain in your IRA.

Also, if you do not withdraw the income on these excess SEP contributions by April 15 following the calendar year of notification by your employer, the income may be subject to a ten percent tax on early distributions if you are not 59½ when you withdraw it.

## IV. Income Allocable To Excess Amounts

The rules for determining the Net Income Attributable to an excess SEP contribution are the same as those governing regular IRA contributions. The trustee or custodian of your SEP will inform you of the Net Income Attributable to excess amounts.

## V. Availability of IRA Contribution Deduction to SEP Participants

In addition to any SEP amounts, you may contribute the lesser of $4,000 or 100% of compensation to an IRA. However, the amount that you may deduct is subject to various limitations. See *IRS Publication 590* for more specific information.

## VI. SEP Amounts–Rollover or Transfer to Another IRA

You may withdraw, or receive, funds from your SEP, and no more than 60 days later, place such funds in another IRA or SEP. This is called a "rollover" and may not be done without penalty more frequently than once every 12 months. However, there are no restrictions on the number of times that you may make "transfers" if you arrange to have such funds transferred between the trustees so that you never have possession of the funds.

You may not roll over or transfer an excess SEP contribution from your SEP to another IRA. These excess amounts may be reduced only by a distribution to you.

## VII. Filing Requirements

You do not need to file any additional forms with the IRS because of participation in the SEP.

## VIII. Financial Institution Where IRA is Established to Provide Information

The financial institution must provide you with a Traditional IRA Disclosure Statement and Trust Agreement booklet that contains the following items of information in plain nontechnical language.

1. The statutory requirements that relate to the IRA;

2. The tax consequences that follow the exercise of various options and what those options are;

3. Participation eligibility rules and rules on the deductibility and nondeductibility of retirement savings;

4. The circumstances and procedures under which you may revoke the IRA, including the name, address, and telephone number of the person designated to receive notice of revocation (this explanation must be prominently displayed at the beginning of the disclosure statement);

5. Explanations of when penalties may be assessed against you because of specified prohibited or penalized activities concerning the IRA; and

6. Financial disclosure information which:

*(Continued on next page.)*

a)  Either projects value, growth, rates of the IRA under various contribution and retirement schedules, or describes the method of computing and allocating annual earnings and charges which may be assessed;

b)  Describes whether, and for what period, the growth projections for the plan are guaranteed or a statement of earnings rate and terms on which these projections are based, and;

c)  States the sales commission to be charged in each year expressed as a percentage of $1,000.

See *Publication 590*, "Individual Retirement Arrangements," which is available at most IRS offices, for a more complete explanation of the disclosure requirements.

In addition to the disclosure statement, the financial institution is required to provide you with a financial statement each year. It may be necessary to retain and refer to statements for more than one year in order to evaluate the investment performance of your IRA and in order that you will know how to report IRA distributions for tax purposes.

# Privacy Policy

Fiserv Trust Company, as the Trustee of your account(s) recognizes that you have a reasonable expectation that the confidentiality of your nonpublic personal information will be maintained. As a result, Fiserv Trust Company has adopted this Privacy Policy concerning information that you provide and information that is obtained in the normal course of business.

Information about you is collected for purposes of administering your account(s). Information, about you, is collected for specific business purposes and not for resale or transferred to unaffiliated parties. If you close your account or it becomes inactive, Fiserv Trust Company will continue to adhere to the privacy policies and practices described in this notice.

The information we collect, the source of the information and the purposes for which it is used are explained below.

## Information Collected

Nonpublic personal information is collected and retained by Fiserv Trust Company for the purposes of administering the account. It is not furnished to third parties for any purpose other than to administer the account. The information we collect can be summarized as follows:

Account establishment information, such as, the Account Owner's name, address, social security number and designation of beneficiaries.

Account transaction information, including, but not limited to, transactions that have occurred within your retirement account such as contributions and distributions. If the account was transferred from another financial institution, it may contain records from that institution.

## Nonpublic Information That Is Disclosed

All information in your account may be disclosed to any person or entity you have authorized. In addition, information may be disclosed to affiliated or nonaffiliated third parties to further the Account Owner's goals in establishing the account. Categories of information disclosed are as follows:

Identifying information, such as, name, address and social security or tax identification number.

Account transaction information, including, all transactions that have occurred within your account.

## Parties to Whom We May Disclose Nonpublic Information

Identification and transaction information may be disclosed to affiliated and non-affiliated parties for the following reason:

Non-financial companies, including tax form providers, and companies that mail tax forms and reports to you or the Internal Revenue Service.

Nonpublic personal information is not disclosed to any party except as permitted by law.

## How the Confidentiality of Your Nonpublic Personal Information is Protected

Safeguards have been put into place that protect the privacy of your nonpublic personal information. Your information is not sold or traded to nonaffiliated companies. When information is provided to third party providers to service the account, safeguards are in place to make certain that the information is used only for the purpose it is provided.

Internally, records are maintained on secured computers. Prospective employees are screened for criminal convictions and drug use. Once hired, employees are advised of this privacy policy and of the confidential nature of the information they handle. Employees are limited to accessing only customer information that is necessary to perform their job functions.



Fiserv Investment Support Services
717 17th Street
Suite 1700
Denver, CO 80202-3331

**Financial Institution Services**
P.O. Box 5550
Denver, CO 80217-5550
Toll Free: 800-492-0165
www.fiserviss-fiservices.com

Fiserv Investment Support Services is a marketing name of Fiserv Trust Company, member FDIC.
© Fiserv Trust Company, 2005
FI-FISS-3528 9/05

1

## PROOF OF SERVICE BY MAIL

2       I am employed in the State of California. I am over the age of 18 years and not a party to
the within action; my business address is 15821 Ventura Boulevard, Suite 275, Encino,

3   California 91436.

4       On the 18th day of July, 2007, I served the foregoing document described as DEBTOR'S
OPPOSITION TO MOTION OBJECTING TO DEBTOR'S CLAIM OF EXEMPTION;

5   DECLARATIONS OF DENISE WILSON AND WILLIAM S. PATRICK on parties in this
action by placing a true copy thereof enclosed in a sealed envelope with postage thereon fully

6   prepaid, in the United States mail at Encino, California, addressed as follows:

7   SEE ATTACHED

8       I sealed and placed such envelope for collection and mailing to be deposited in the mail
on the same day in the ordinary course of business at Encino, California. The envelope was

9   mailed with postage thereon fully prepaid.

10       I declare under penalty of perjury under the laws of the State of California that the above
is true and correct.

11

    Executed this 18th day of July, 2007, at Encino, California.

12

13                                        Leonora Gorelik

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Service List

Attorney for Creditor Walter Prince
Allan D. Sarver
16633 Ventura Blvd.
Suite 800
Encino, CA 91436

Office of the US Trustee
U.S. Trustee
21051 Warner Center Lane, Ste. 115
Woodland Hills, CA 91367

Counsel for Chapter 7 Trustee
Daniel Gill
Law Offices of Ezra/Brutzkus/Gubner LLP
21650 Oxnard St., Ste 500
Woodland Hills, CA 91367