1 | **ALLAN D. SARVER** SBN 106282
Attorney at Law
2 | 16633 Ventura Boulevard
Suite 800
3 | Encino, California 91436

4 | Telephone No.: (818) 981-0581
Facsimile No.: (818) 981-0026
5 |
Attorney for Creditor
6 | Walter N. Prince

7 |

8 | **UNITED STATES BANKRUPTCY COURT**

9 | **CENTRAL DISTRICT OF CALIFORNIA**

10 | **SAN FERNANDO VALLEY DIVISION**

11 |

12 |

In Re: )

13 | ) CHAPTER 7
WILLIAM S. PATRICK ) CASE NO. 1:07-bk-10312GM
14 | )
) FURTHER RESPONSE TO DEBTOR'S JUNE
15 | ) 11, 2008 REPLY TO RESPONSE TO
Debtor ) DECLARATIONS OF DONALD L.
16 | ) FIFE, CPA AND WILLIAM S. PATRICK
)
17 | ———————————————————

18 |
DATE: 8/27/08
19 | TIME: 10:00 a.m.
CTRM: 303
20 |

21 |

**TO: GERALDINE MUND, UNITED STATES BANKRUPTCY JUDGE AND TO ALL**

22 | **INTERESTED PARTIES:**

23 |

    **COMES NOW** WALTER N. PRINCE (hereinafter, "Movant") appearing

24 |

through his counsel, Allan D. Sarver in response to Debtor's

25 |

Further Response to Debtor's June 11, 2008
26 | Reply to Prince's Response to Declarations of
Fife and Patrick
27 |

28 |                                    1

1   Reply to Response to the Declaration of Donald Fife filed in

2   support of the Supplement to Debtor's Oppositions to Motion

3   Objecting to Debtor's Claim of Exemption, and in support thereof,

4   alleges as follows:

5   **I. INTRODUCTION:**

6        At the hearing held on June 18, 2008, the court was advised

7   of Prince's contention that the entirety of the IRA is property

8   of the estate since the disputed contributions to the IRA total

9   $140,899.79, and exceed the exempt amount already withdrawn from

10  the IRA. Therefore, the balance remaining on hand is not exempt.

11       Debtor has advised that contact has been made with the IRS

12  in an attempt to locate the tax returns for 1975 through 1981.

13  Depending upon the outcome of the search, the issue of whether or

14  not Debtor made contributions for the years in question will be

15  addressed; however, there is presently no contractual or other

16  documentation before the court showing when, or even if the IRA

17  was created in accordance with IRS regulations.   Therefore,

18  prior objections to the adequacy of proof submitted by debtor for

19  the years in issue remain unresolved.

20       The foregoing notwithstanding, and reserving all rights and

21  arguments, Debtor produces a chart at P.3 of his Reply, however

22  mis-states its content and intent. Debtor contends:

23  "The chart produced by the objecting party himself and attached

24  as Exhibit B to his Motion Objecting To Debtor's Claim of

25

26  Further Response to Debtor's June 11, 2008
    Reply to Prince's Response to Declarations of
    Fife and Patrick

27

28                                  2

1  Exemption (filed 6/18/07), admits that Patrick started his IRA by

2  no later than 1977: [SEE CHART ON NEXT PAGE]."

3      The Chart does not constitute an admission of anything.

4  Prince has no idea what Patrick does with his money and the Chart

5  was created merely to demonstrate what the law allows.  It was

6  not until the Court shifted the burden of proof to Debtor to

7  produce documents demonstrating the creation and growth of the

8  IRA, that the issues relative thereto were able to be defined and

9  argued.

10

11 **A.   THE ROLLING OVER OF IRA THREE TIMES WITHIN A ONE YEAR PERIOD**

12 **DISQUALIFIES DEBTOR'S IRA.**

13      There is no dispute that there were three Indirect Rollovers

14 from Debtor's IRA within a twelve month period.  Debtor further

15 does not dispute that he obtained cashiers checks from the banks

16 where the money was on deposit as shown by Exhibit A hereto which

17 consists of true and correct copies of the three cashiers checks

18 obtained by debtor within the twelve month period in issue.

19      Prince contends the multiple indirect rollovers within a

20 twelve month period disqualify the IRA from protection and

21 violate  26 U.S.C. 408(d)(3)(B), which provision Debtor contends

22 does not apply.  Debtor contends further that taking possession

23 of the cashiers checks and then redepositing them into the IRA

24 account(s) or otherwise having them voided, does not constitute

25
   Further Response to Debtor's June 11, 2008
26 Reply to Prince's Response to Declarations of
   Fife and Patrick

27

28                              3

1  taking possession and/or control of the funds in the IRA account.

2  As Prince previously argued:

3  "....(d) Tax treatment of distributions

4  "(3) Rollover contribution

5  An amount is described in this paragraph as a rollover

6  contribution if it meets the requirements of

7  subparagraphs (A) and (B).

8  "(B) Limitation This paragraph does not apply to any amount

9  described in subparagraph (A)(i) received by an individual

10  from an individual retirement account or individual

11  retirement annuity if at any time during the 1-year period

12  ending on the day of such receipt such individual received

13  any other amount described in that subparagraph from an

14  individual retirement account or an individual retirement

15  annuity which was not includible in his gross income because

16  of the application of this paragraph."

17  Internal Revenue Code Section 408(d)(3)(B); See Also: Retirement

18  Account Answer Book, 14th Ed. Aspen Publisher, 2008 P. 6-12;

19  Q:615-16

20  Prince contends that Exhibit A hereto clearly demonstrates

21  that within a twelve month period from June 5, 2006 thru

22  September 27th, 2006, Debtor took the voluntary step of taking

23  possession and control on three separate occasions of large

24  distributions from his IRA, then making "rollover contributions"

25

26  Further Response to Debtor's June 11, 2008
   Reply to Prince's Response to Declarations of
27  Fife and Patrick

28                                    4

1 of the distributions back into the IRA account within a twelve
2 month period.  These were not errors by the bank or any third
3 party.  Therefore, the excess "rollover contributions" disqualify
4 the IRA under IRC Sections 408, 408a, etc. et. al.

5     Debtor contends that taxes would have to have been paid for
6 the Rollovers to be deemed concluded. The payment of taxes if a
7 rollover (x3) occurs within a twelve month period is not the
8 issue.  It is not only irrelevant, but a separate issue between
9 Debtor and the IRS.

10     The correct question is whether Debtor's IRA lost its
11 status as a qualified plan as Prince contends.

12     Debtor's positions in this case have flip-flopped from the
13 beginning, starting with testimony that he had no documents going
14 back more than three years, then suddenly producing twenty (20)
15 years of tax returns and other financial data.  The most recent
16 flip-flop concerns what he did with or intended to do with the
17 IRA Distributions in 2006.

18     An example of this latest talebearing is that,

19     As shown by the Fife Declaration at P.5:11-12, Patrick said
20 he "considered rolling over his IRA into a different financial
21 institution."  However, Patrick testified during his 7-25-07
22 examination (2004 exam) that he pulled the funds to "buy stocks".
23 He did NOT say he intended to "roll it over into a different
24 financial institution".  Debtor's 2004(a) examination reveals the

25

26 Further Response to Debtor's June 11, 2008
Reply to Prince's Response to Declarations of
27 Fife and Patrick

28                         5

1 following statements which contradict those contained in the

2 current opposition papers.

3     Examination Transcript   Page 73 lines 7 - 11 (copies of

4 which are attached as Exhibit "B") states:

5 "YES.  I PULLED OUT ALL BUT ABOUT $3- OR $400 FROM MY IRA.  I

6 WAS GOING TO PURCHASE STOCK.

7 Q. UH-HUH

8 A.  THEN I DECIDED NOT TO PURCHASE STOCK.  I PUT IT BACK IN, THE

9 EXACT SAME AMOUNT.

10 Pages 74 & 75 state:

11 WHEN I TOOK $175,000 OUT, I PUT $175,000 BACK IN WITHIN A COUPLE

12 OF WEEKS

13 Q.   OKAY

14 A.   A WEEK OR TWO OR WHATEVER.  AND I SAW THAT COME THROUGH, AND

15 I CALLED THEM AND THEY SAID YOUR ACCOUNTANT WILL UNDERSTAND WHAT

16 YOU DID.  SO I DID IT A SECOND TIME. I PULLED OUT $175,000,

17 ROUGHLY, AND I WAS GOING TO BUY SOME MORE STOCK AND THEN ALL OF A

18 SUDDEN I SAID WELL, HELL, IF I WERE TO DO THAT I'VE GOT TO PAY

19 TAXES ON $175,000.  SO I PUT THE WHOLE THING BACK IN THERE.  SO I

20 DID IT TWICE AND SPENT NOTHING."

21     Actually, according to Fife's Exhibits 22 & 23, Patrick "did

22 it" three times rather than "twice", as shown in Exhibit A.

23

24 **B.   THE ISSUE OF THE QUALIFICATION OF THE IRA IS TIMELY BEFORE**

25

26 Further Response to Debtor's June 11, 2008
Reply to Prince's Response to Declarations of
Fife and Patrick

27

28                         6

1 | **THE COURT**

2   Debtor contends that after one year of litigation, and more

3 than two months after the Objecting Party received Don Fife's

4 declaration (it was filed 3/25/08), the Objecting Party did not

5 bring up the "disqualification" issue until 14 days prior to the

6 hearing. Local Rule 9013-1 requires 24 days' notice of a motion.

7 Debtor contends that bringing up a new issue this late in the

8 proceedings is untimely.

9   Prince's argument is timely. This is the first time Prince

10 could assert the issue as it was not until the court shifted the

11 burden of proving the creation and growth of the IRA to the

12 Debtor, that Debtor suddenly discovered and then produced twenty

13 years of records which he previously testified did not exist past

14 three years.   It was only after seeing the documents for the

15 first time, that the questionable status of the IRA as being

16 qualified under IRS Guidelines, first became unknown to Prince.

17

18 | **C. 26 U.S.C. §408 APPLIES TO THE CASE AT BAR, AND VIOLATION OF**

19 | **ITS PROVISIONS RESULTS IN A DISQUALIFICATION OF THE IRA.**

20   Bankruptcy courts routinely apply applicable state and

21 federal law.   This includes IRS rules and regulations, state

22 statutes and ERISA guidelines. 28 U.S.C. 157(b) etc. et. al.

23   Debtor contends: "The rule requiring that taxes be paid if a

24 'rollover' occurs in an IRA account more than once every 12

25

26 Further Response to Debtor's June 11, 2008
Reply to Prince's Response to Declarations of
Fife and Patrick

27

28 | 7

1   months is contained in 26 U.S.C. §408(d)(3)(A and B). 26 U.S.C.

2   §408(d)(3) was not incorporated into the Bankruptcy Code. While

3   the limitation on rollovers of pension funds contained at 26

4   U.S.C. §402(c) was incorporated (see 11 U.S.C. §522(b)(4)(D)),

5   Bankruptcy Code Section 522(b)(4)(D) notably omits any mention of

6   26 U.S.C. §408(d)(3)....Internal Revenue Code Section 408(d)(3)

7   does not apply for various significant reasons..."

8      Prince Contends that 26 U.S.C. §408(d)(3)(B) clearly

9   applies.

10     11 U.S.C. Section 522(n) specifically states:

11         "n) For assets in individual retirement accounts

12   described in section 408 or 408A of the Internal Revenue Code of

13   1986, other than a simplified employee pension under section

14   408(k) of such Code or a simple retirement account under section

15   408(p) of such Code, the aggregate value of such assets exempted

16   under this section, without regard to amounts attributable to

17   rollover contributions under section 402(c), 402(e)(6),

18   403(a)(4), 403(a)(5), and 403(b)(8) of the Internal Revenue Code

19   of 1986, and earnings thereon, shall not exceed $1,000,000 in a

20   case filed by a debtor who is an individual, except that such

21   amount may be increased if the interests of justice so require."

22     For Debtor to contend the section is not applicable is

23   simply disingenuous.

24

25

Further Response to Debtor's June 11, 2008
26  Reply to Prince's Response to Declarations of
Fife and Patrick

27

28                                  8

1  **D. DEBTOR RECEIVED AND TOOK POSSESSION AND SOLE CONTROL OF**

2  **CASHIERS CHECKS WHICH HE CAUSED TO BE WITHDRAWN FROM HIS IRA ON**

3  **THREE OCCASIONS, THUS CONSTITUTING IMPERMISSIBLE ROLLOVERS,**

4  **DISQUALIFYING HIS IRA UNDER 26 U.S.C. 408(D)(3)(B).**

5      Debtor argues Section 408(d)(3)(B) only applies if funds in

6  an IRA account are "received" by a taxpayer and since the

7  cashier's checks at issue were never deposited or cashed by

8  William Patrick, he never "received" the funds. Debtor cites

9  California Commercial Code §3-408 to support this argument, but

10  the section must be read in conjunction with Section 3-409.

11      Cal. C. Code Sec. 3-408 provides:

12      "A check or other draft does not of itself operate as an

13  assignment of funds in the hands of the drawee available for its

14  payment, and the drawee is not liable on the instrument until the

15  drawee accepts it."

16      Cal. C. Code Sec. 3-409 provides "(a) 'Acceptance' means the

17  drawee's signed agreement to pay a draft as presented. It shall

18  be written on the draft and may consist of the drawee's signature

19  alone. Acceptance may be made at any time and becomes effective

20  when notification pursuant to instructions is given or the

21  accepted draft is delivered for the purpose of giving rights on

22  the acceptance to any person.

23      "(b) A draft may be accepted although it has not been signed

24  by the drawer, is otherwise incomplete, is overdue, or has been

25

26  Further Response to Debtor's June 11, 2008
Reply to Prince's Response to Declarations of
Fife and Patrick

27

28          9

1  dishonored.

2      "(c) If a draft is payable at a fixed period after sight and
3  the acceptor fails to date the acceptance, the holder may
4  complete the acceptance by supplying a date in good faith.

5      "(d) 'Certified check' means a check accepted by the bank on
6  which it is drawn. Acceptance may be made as stated in
7  subdivision (a) or by a writing on the check which indicates that
8  the check is certified. The drawee of a check has no obligation
9  to certify the check, and refusal to certify is not dishonor of
10  the check."

11     Prince contends the Debtor took all the required steps to
12  withdraw money from his IRA on three separate occasions via
13  cashiers checks made  made payable to himself. (See Exhibit A)

14     That Debtor later chose to re-deposit the funds into the
15  source account does not correct the violation. **26 U.S.C.**
16  **408(D)(3)(B) governs**, and as a result of the multiple rollovers,
17  Patrick who had absolute and complete possession and control over
18  the funds three times within a twelve month period, caused his
19  IRA to lose its qualification as possession of the cashiers
20  checks occurred at the instant he was handed the check(s) by his
21  bank.  Indeed, his testimony was that he intended to "buy stocks"
22  with the checks.

23     Debtor cites <u>Sharpe v FDIC</u> (See Opp. P.7:15-16) in support
24  of his argument that he never had physical receipt of the funds,

25

26  Further Response to Debtor's June 11, 2008
   Reply to Prince's Response to Declarations of
27  Fife and Patrick

28                              10

1  referencing a portion of the decision standing for the

2  proposition that "a cashier's check, on the other hand, is a

3  negotiable instrument that is only an order to pay."

4        Appellants appealed the district court's dismissal of their

5  action for declaratory, injunctive and monetary relief against

6  the Federal Deposit Insurance Corporation ("FDIC").  Sharpe dealt

7  with a breach of a settlement agreement and the "Drawer's

8  creditworthiness where the Sharpes were holders of cashier's

9  checks of a failed financial institution where the FDIC refused

10 to honor a cashier's check issued by the Sharpe's bank."

11       "Pursuant to the settlement agreement, the Sharpes delivered

12 a reconveyance of the debtor's deed of trust and the debtor's

13 promissory note to Pioneer Bank. Pioneer Bank was under a

14 contractual obligation to pay the Sharpes $510,000 with a wire

15 transfer of funds. Contrary to the terms of the settlement

16 agreement, the bank tendered payment in the form of two cashier's

17 checks, which the FDIC subsequently refused to honor."

18       The case is distinguished from the case at bar and not

19 applicable. Here Patrick had full possession of the cashier's

20 checks from a fully solvent bank. Therefore, Patrick had full

21 control over the funds.

22       Cal. Commercial Code Section 3-408 points out the obvious

23 fact that the check does not operate as an assignment UNTIL the

24 bank cashes it.  Meanwhile, the checks were still in full

25

26 Further Response to Debtor's June 11, 2008
   Reply to Prince's Response to Declarations of
   Fife and Patrick

27

28                                    11

1  possession and control of Patrick.  The bank gave up control when

2  it issued the Cashiers checks to Debtor who assumed control.

3      Cal. Commercial Code Section 3-409 defines "acceptance" as

4  "the drawee's (bank's) signed agreement to pay a draft as

5  presented."  Section 3-409 goes on to say "Acceptance may be made

6  at any time…"

7      Further, "If certification of check is procured at instance

8  of payee to whom check has been delivered, transfer of drawer's

9  claim to payee or holder of check occurs at time of

10  certification, but if certification is procured at instance of

11  drawer, transfer does not occur until check is delivered to

12  payee..." Umbsen v. Crocker First Nat. Bank of San Francisco

13  (1949) 33 Cal.2d 599.

14      Debtor requested and procured the check, and took delivery,

15  thereby constituting acceptance of the check by Debtor.  The

16  payee of a cashier's check in possession thereof is the holder of

17  a negotiable instrument. "The payee of a cashier's check in

18  possession thereof is the holder of a negotiable instrument."

19  (Civ.Code, § 3097; Flores v. Woodspecialties, Inc., 138

20  Cal.App.2d 763, 770, 292 P.2d 626.)

21      The facts are admittedly clear.  Debtor on three separate

22  occasions withdrew money in the form of cashier's checks from his

23  IRA account within a twelve month period.  The law is clear that

24  these multiple withdrawals cost Debtor's IRA its qualified status

25

26  Further Response to Debtor's June 11, 2008
   Reply to Prince's Response to Declarations of
   Fife and Patrick

27

28                             12

1 under 26 U.S.C. 408A.

2

3 **E. THE DOCTRINE OF CONSTRUCTIVE RECEIPT IS APPLICABLE TO RENDER**

4 **THE NORMAL DISTRIBUTIONS RECEIVED BY DEBTOR THREE TIMES IN A**

5 **TWELVE MONTH PERIOD IMPERMISSIBLE ROLLOVERS, FURTHER**

6 **DISQUALIFYING HIS IRA UNDER 26 U.S.C. 408(D)(3)(B).**

7    Submitted herewith is the Declaration of Vijay K. Ahuja CPC,

8 CFP which supplements the declaration previously submitted in

9 support of Prince's contention that the Doctrine of "Constructive

10 Receipt" applies to the funds withdrawn by Debtor from his IRA on

11 three separate occasions, even if they were deposited in the same

12 account.   The withdrawals clearly constitute three separate

13 distributions/rollover transactions.   In addition, Constructively

14 Received Income is defined in IRC 1.451-1(a), and explained by

15 the Internal Revenue Service in Publication 525(2007) as "A valid

16 check that you received or that was made available to you before

17 the end of the tax year is considered income constructively

18 received in that year."

19    26 U.S.C. SEC. 451. GENERAL RULE FOR TAXABLE YEAR OF

20 INCLUSION   451(a) General Rule.

21    "-The amount of any item of gross income shall be

22 included in the gross income for the taxable year in which

23 received by the taxpayer, unless, under the method of accounting

24 used in computing taxable income, such amount is to be properly

25

26 Further Response to Debtor's June 11, 2008
Reply to Prince's Response to Declarations of
Fife and Patrick

27

28                              13

1 accounted for as of a different period."

2     "Income, although not actually reduced to a taxpayer's

3 possession, is constructively received during the taxable year it

4 is (1) credited to a taxpayer's account, (2) set apart for a

5 taxpayer, or (3) otherwise made available to the taxpayer.

6 However, income is not constructively received if the taxpayer's

7 control of the income is subject to substantial limitations or

8 restrictions. See sec. 1.451-2(a), Income Tax Regs.; see also

9 Ames v. Commissioner, 112 T.C. 104 (1999); Childs v.

10 Commissioner, 103 T.C. 634 (1994).

11     Further, for taxation purposes income is received or

12 realized **when it is made subject to the will and control of the**

13 **taxpayer and can be, except for his own action or inaction,**

14 **reduced to actual possession"** (emphasis added) . Furstenberg v.

15 Commissioner, 83 T.C. 755, 791 (1984) (citing Loose v. United

16 States, 74 F.2d 147, 150 (8th Cir. 1934)).

17     See Also: UNITED STATES TAX COURT Filed November 13, 2002

18 No. 11836-00 Chris Alan Roberts, pro se. Ron S. Chun, for

19 respondent. Docket Number 11836-00  "We hold that the

20 distribution income was available to petitioner and, except for

21 his own inaction while in alcohol rehabilitation, was subject to

22 his will and control in 1997. Despite his incarceration,

23 petitioner had the ability to exercise dominion and control over

24 the distribution check. Petitioner's incarceration was not a

25

26 Further Response to Debtor's June 11, 2008
Reply to Prince's Response to Declarations of
Fife and Patrick

27

28                   14

1  sufficient impediment to his control over the check that was
2  received at his residence during 1997. He had access to a
3  telephone, and there were individuals who could have assisted
4  petitioner in cashing the check. The fact that the distribution
5  was made in the form of a cashier's check ensured that funds were
6  set aside and available for petitioner. Other than his inaction,
7  petitioner did not show or argue that there were any other
8  limitations or restrictions on his control over the distribution
9  check. Accordingly, we hold that the distribution income was
10 constructively received by petitioner in 1997 and was includable
11 in petitioner's income for that year."

12      Prince contends that the Debtor's obligation, whether he
13 complied or not, is clear.  Upon distribution of IRA funds, the
14 Custodian of the IRA is required by the Internal Revenue Service
15 to file form 1099-R. A true and correct copy of Patrick's 1099-R
16 is attached as Exhibit "C" hereto to report the distributions.
17 True and correct copies of the three cashier's checks are
18 attached as Exhibit A hereto.

19      Exhibits 22 & 23 to Mr. Fife's prior declaration show the
20 withdrawals as a "Normal Retirement Distributions" of the amounts
21 in contention, establishing the fact that these were rollovers,
22 which further confirms that the subsequent rollovers after the
23 first rollover are considered as excess contributions to an
24 Individual Retirement Account and must be removed from the

25

26 Further Response to Debtor's June 11, 2008
   Reply to Prince's Response to Declarations of
   Fife and Patrick
27

28                         15

1  Individual Retirement Account as provided for in Internal revenue

2  Code section 408.

3      IRS 2007 Publication 525 Constructively Received Income.
"You are generally taxed on income that is available to you,
4  regardless of whether it is actually in your possession. A valid
check that you received or that was made available to you before
5  the end of the tax year is considered income constructively
received in that year, even if you do not cash the check or
6  deposit it to your account until the next year. For example, if
the postal service tries to deliver a check to you on the last
7  day of the tax year but you are not at home to receive it, you
must include the amount in your income for that tax year. If the
8  check was mailed so that it could not possibly reach you until
after the end of the tax year, and you could not otherwise get
9  the funds before the end of the year, you include the amount in
your income for the next tax year."

10

11      From the 2005 Form 1099-R Instructions: Specific
Instructions for Form 1099-R. "File Form 1099-R, Distributions
    From Pensions, Annuities, Retirement or Profit-Sharing Plans,
12  IRAs, Insurance Contracts, etc., for each person to whom you have
made a distribution or are treated as having made a distribution
13  of $10 or more from profit-sharing or retirement plans, any IRAs,
insurance contracts, survivor income benefit plans, permanent and
14  total disability payments under life insurance contracts,
charitable gift annuities, etc."

15

16  **F. 11 U.S.C. §522(b)(4)(D) DOES NOT APPLY TO THE WITHIN SET OF**

17  **FACTS UNLIKE 26  U.S.C. §408**

18
       Debtor contends that "11 U.S.C. §522(b)(4)(D) governs which
19
   "transfers" and/or rollovers do and do not disqualify the
20
   exemptability of assets described in 522(b)(3)(C)."
21
       The purpose of Section §522(b)(4)(D) is at odds with
22
   Debtor's position.  §522(b)(4)(D)'s purpose is to protect the
23
   exemption in the property regardless of where the money comes to
24
   rest.   The section assumes the property is exempt by referring to
25

26  Further Response to Debtor's June 11, 2008
   Reply to Prince's Response to Declarations of
   Fife and Patrick

27

28                                  16

1  an amount that:

2      "(1) has been distributed from a fund or account that is

3  exempt from taxation under ...408,408(A)..."

4      **Debtor previously argued that 408, etc., was not provided**

5  **for in the Code, however, the very IRC sections which Debtor**

6  **contends are not included in the bankruptcy code appear again.**

7

8  **G.   THE FUNDS ARE NOT REASONABLY NECESSARY FOR DEBTOR'S FUTURE**

9  **SUPPORT.**

10      Debtor argues that even if Section 408(a) applies, the

11  entirety of the IRA is necessary to his future support.    There

12  is no evidence to show anything alleged, as it is all

13  speculative.   Further, Debtor's Schedules I and J previously

14  submitted to this court show that debtor has approximately

15  $28,000 in annual income from two other sources from which to

16  live on.   He is hardly left without a penny.   Further, as a

17  Veteran, he has access to all the medical help he may require for

18  his lifetime, including medical prescriptions at substantially

19  discounted prices.

20      Is Patrick paying his current legal expenses from his IRA

21  account?   If not, where is the money coming from?

22      The 2003 life expectancy table which Mr. Fife wishes us to

23  follow has not been approved yet by the IRS or as a reasonable

24  table for purposes of calculating payouts even for National

25

26  Further Response to Debtor's June 11, 2008
   Reply to Prince's Response to Declarations of
27  Fife and Patrick

28                              17

1  Retirement Plans. Published Guidelines under IRS Pension Payout

2  Rules Section 401 requires pension actuaries to use only approved

3  life expectancy tables.  Mr. Ahuja's reliance on 1983 mortality

4  tables is proper.

5

6  **II.    CONCLUSION:**

7       For all of the foregoing reasons, it is respectfully

8  requested that:

9       a.   The Court disallow the Debtor's claimed exemption as to

10 all amounts claimed as exempt for the period of 1975 - 1981, as

11 well as the interest calculated thereon through 2006, to wit:

12 $119,271.80.

13      b. The Court disallow the March 5, 1997, $2,000.00

14 contribution plus interest thereon, as duplicative of the 1997

15 contribution made on January 13,1997.

16      c.   The Court disallow the sum of $4000.00, plus interest

17 thereon deposited on July 17, 2006 as Debtor was not allowed by

18 law to make IRA contributions after 2005.

19      d.   The Court disallow the sum of $15,000 deposited as a

20 "transfer from another source" on June 21, 2006 plus interest

21 thereon as this deposit was not a "legitimate rollover" from any

22 known or claimed IRA account;

23      e.   The Court disallow the sum total of the IRA, or so much

24 thereof as he may be entitled, based on Debtor's violations of 26

25

26 Further Response to Debtor's June 11, 2008
   Reply to Prince's Response to Declarations of
27 Fife and Patrick

28                              18

1 U.S.C. 408(d)(3)(B) which disqualified the complete IRA, and

2 acknowledge only that sum which Debtor requires for his future

3 support per IRS Guidelines, to wit: the maximum sum of

4 $120,158.00.  Further, the court find that Debtor has adequate

5 income from alternative sources, SSA and military pension which

6 far exceeds the $120,158 necessary for future support over the

7 next 14 years, so no funds are required from existing bank

8 accounts controlled by Debtor.

9      f. The court find that since the disputed contributions

10 total $140,899.79, they exceed the exempt amount already

11 withdrawn from the IRA thus rendering the remaining balance non-

12 exempt.

13      g.  The Court grant such other relief as it deems just and

14 proper.

15

16 Dated: June 24, 2008

                                         ALLAN D. SARVER, ESQ.

17                                          Attorney for Creditor/Movant
Walter N. Prince

18

19

20

21

22

23

24

25

26 Further Response to Debtor's June 11, 2008
Reply to Prince's Response to Declarations of
Fife and Patrick

27

28                                     19

1

**DECLARATION OF ALLAN D. SARVER**

2

I ALLAN D. SARVER declare that:

3

1.  If called upon as a witness I would testify competently

4

and under oath that the within declaration is true and correct of

5

my own personal knowledge.

6

2. The exhibits submitted herewith are true and correct

7

copies of the those maintained by your declarant in the ordinary

8

and normal course of my law practice.

9

3.  I declare under penalty of perjury that the within

10

declaration is true and correct and that this declaration was

11

executed on the 24TH  day of June, 2008 in Encino, California.

12

13

_____

ALLAN D. SARVER

14

Declarant

15

16

17

18

19

20

21

22

23

24

25

26

Further Response to Debtor's June 11, 2008
Reply to Prince's Response to Declarations of
Fife and Patrick

27

28

1    **DECLARATION OF VIJAY KUMAR AHUJA**

2    I, VIJAY KUMAR AHUJA declare that:

3    1. If called upon as a witness, I would testify that the

4    within declaration is true and correct of my own personal

5    knowledge.

6    2. I hereby incorporate the contents of the Declaration

7    previously filed with the court on behalf of Mr. Prince.

8    3. I have reviewed the subsequent Declaration of Donald Fife

9    and the documents provided in support thereto.  I have also gone

10   back and reviewed the prior Declaration of Mr. Fife and the

11   attachments thereto.

12   4.  In my business and through my education, I am familiar

13   with the applicable rules and regulations governing creation and

14   maintenance of Individual Retirement Accounts promulgated by the

15   IRS and the rules relative to allowable mortality tables.

16   5.  Contrary to the opinion of Mr. Fife, the 2003 life

17   expectancy table which he wishes the court to follow has not been

18   approved by the Internal Revenue Service as a reasonable table

19   for purposes of calculating present value of monthly pension

20   benefits even for IRS approved qualified pension plans. Published

21   Guidelines under IRS Pension Payout Rules Section 401, require

22   pension actuaries only to use approved life expectancy tables,

23   prescribed under the code.  The 1983 Group Annuity Mortality

24   tables, which were used in performing the calculations which I

25

26   Further Response to Debtor's June 11, 2008
     Reply to Prince's Response to Declarations of
27   Fife and Patrick

28                              21

1  previously submitted is an accepted life expectancy table under
2  the Internal Revenue Code.

3      6.   The Debtor was in Constructive Receipt of the funds that
4  were withdrawn from the IRA on three separate occasion even if
5  they were deposited in the same account, which clearly
6  constitutes three separate rollover transactions.  Constructively
7  Received Income is defined in IRC 1.451-1(a), and explained by
8  the Internal Revenue Service in Publication 525(2007) as "A valid
9  check that you received or that was made available to you before
10 the end of the tax year is considered income constructively
11 received in that year, even if you do not cash the check or
12 deposit it to your account until the next year."

13     7.   Upon receipt of such income, the Custodian of the IRA is
14 required by the Internal Revenue Service to file form 1099-R
15 instructions, a true and correct copy of which is attached as
16 Exhibit "C" hereto to report the distribution, which is confirmed
17 by Mr. Fife's Exhibits 22 and 23 which reference the
18 distributions in question.  True and correct copies of the
19 referenced exhibits are attached as Exhibit D hereto.

20     8.   Exhibits 22 & 23 to Mr. Fife's prior declaration shows
21 the withdrawals as a "Normal Retirement Distributions" of the
22 amounts in contention establishing the fact that these were
23 rollovers which further confirms that the subsequent rollovers
24 after the first rollover are considered as excess contributions

25
26 Further Response to Debtor's June 11, 2008
   Reply to Prince's Response to Declarations of
27 Fife and Patrick

28                              22

1   to an Individual Retirement Account and must be removed from the

2   Individual Retirement Account as provided for in Internal revenue

3   Code section 408.

4      9.  I declare under penalty of perjury that the foregoing is

5   true and correct and that this declaration was executed on the

6   <u>24th</u> day of June, 2008 at Woodland Hills, California.

7

8                        VIJAY ANAJA, CPC, CFP

9                        Declarant

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26   Further Response to Debtor's June 11, 2008
Reply to Prince's Response to Declarations of
Fife and Patrick

27

28                        23



500075 791





DEPOSIT TICKET

NAME  W. PATRICK

ACCOUNT NO.  1805237

DATE

DEPOSITS MAY NOT BE AVAILABLE FOR IMMEDIATE WITHDRAWAL

SIGN HERE FOR CASH RECEIVED (IF REQUIRED) *

FIRST PRIVATE
BANK & TRUST

10820 Zelzah Ave., Granada Hills, CA 91344

9-7-06

$ 176000

⑀1222404924⑀

**EXHIBIT** __A__

24

$ 176,000 —

7-24-06

300478903

*Rollover Contribution*

**DEPOSIT TICKET**

☑ CASH

90-1449/1222

NAME  WILLIAM S. PATRICK

ACCOUNT NO.  1-805237

FIRST PRIVATE
BANK & TRUST
GH

DATE
DEPOSITS MAY NOT BE AVAILABLE FOR IMMEDIATE WITHDRAWAL    JUL 24 2006

SIGN HERE FOR CASH RECEIVED (IF REQUIRED) ★

SUB TOTAL  90

★ LESS CASH
RECEIVED

**FIRST PRIVATE
BANK & TRUST**    NEW ACCOUNTS

10820 Zelzah Ave., Granada Hills, CA 91344

$ 176,000 —

⑆122240492⑆

---

THE FACE OF THIS DOCUMENT HAS A COLORED BACKGROUND AND MICROPRINT

97625

**FIRST PRIVATE
BANK & TRUST**

Date  JULY 14, 2006

Pay to the
Order of  WILLIAM S. PATRICK

$ **176,000.00**

*ONE HUNDRED SEVENTY SIX THOUSAND 00/100*    Dollars

*Cashiers Check*

Authorized Signature

1805237

Authorized Signature

THE BACK OF THIS CHECK MUST CONTAIN AN ARTIFICIAL WATERMARK OR IS VOID

25

# EXHIBIT  A

6-5-06    @ 12-06

DEPOSIT TICKET

NAME _W. PATEL c/R_

ACCOUNT NO. _001-805237_

DATE _____

DEPOSITS MAY NOT BE AVAILABLE FOR IMMEDIATE WITHDRAWAL

FIRST PRIVATE
BANK & TRUST

FIRST PRIVATE
BANK&TRUST    JUN 12 2006

10820 Zelzah Ave., Granada Hills, CA 9344

NEW ACCOUNTS

⑆1 2 2 4 0 4 9 2⑆:    0 0 1⑆8 0 5 2 3 7⑆

90 2045

SUB TOTAL

LESS CASH
RECEIVED

$ 172,000 —

209



96810

06/01/06    *172,000.00*

FIRST PRIVATE
BANK&TRUST

THE FACE OF THIS DOCUMENT HAS A COLORED BACKGROUND AND MICRO-PRINT

THE BACK OF THIS CHECK MUST CONTAIN AN ARTIFICIAL WATERMARK OR IS VOID

Custom Check

DISTRIBUTION 001-805237

⑆0 0 0 9 6 8 1 0⑆    ⑆1 2 2 4 0 4 9 1⑆:    8 0 1 8 0 4 5    0 8 5⑆

**EXHIBIT** _A_

26

A    (INAUDIBLE RESPONSE.)

Q    IS THAT A YES?

A    YES.

Q    ITEM 15A SAYS "IRA DISTRIBUTIONS $362,020," ON WHICH YOU PAID $14,020 IN TAXES.  CAN YOU EXPLAIN TO ME WHAT THAT REFERS TO?

A    YES.  I PULLED OUT ALL BUT ABOUT $3- OR $400 FROM MY IRA.  I WAS GOING TO PURCHASE STOCK.

Q    UH-HUH.

A    THEN I DECIDED NOT TO PURCHASE STOCK.  I PUT IT BACK IN, THE EXACT SAME AMOUNT.

Q    DO YOU HAVE ANY DOCUMENTATION THAT REFLECTS THAT?

MR. SHARF:  DO WE HAVE IT OR CAN WE GET THAT?

BY MR. SARVER:

Q    I'M ASKING IF YOU HAVE IT, FIRST OF ALL.

A    I WENT AND ASKED THE GAL OVER THERE AT THE BANK.  I SAID "HOW CAN I HAVE THIS AMOUNT OF MONEY?  I NEVER HAD IT IN THERE."  AND SHE SAID, "WELL, YOUR ACCOUNTANT WILL TAKE CARE OF IT ON THE STATEMENT."

Q    I'M NOT SURE I UNDERSTAND THAT.  WHAT DO YOU MEAN YOU NEVER HAD IT IN THERE?

A    WELL, I HAD ABOUT $175,000 IN THERE.

Q    UH-HUH.

A    AND TIMES TWO, YOU TAKE IT OUT -- AND I DON'T KNOW HOW THEY GOT THAT FIGURE.

73

27                    WILLIAM PATRICK EXHIBIT     B

CORRECTED (if checked)

| PAYER'S name, street address, city, state, and ZIP code | 1 Gross distribution | OMB No. 1545-0119 | Distributions From Pensions, Annuities, Retirement or Profit-Sharing Plans, IRAs, Insurance Contracts, etc. |
|---|---|---|---|
| FIRST PRIVATE BANK & TRUST 10820 ZELZAH AVE GRANADA HILLS, CA 91344 | $ 362,019.72 | **2006** Form **1099-R** | |
| | 2a Taxable amount $ 362,019.72 | | |
| | 2b Taxable amount not determined [ ]   Total distribution [X] | | |

| PAYER'S Federal identification number | RECIPIENT'S identification number | 3 Capital gain (included in box 2a) $ | 4 Federal income tax withheld $ | Copy C |
|---|---|---|---|---|
| 95-3884002 | 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 | | | For Recipient's Records |

| RECIPIENT'S name, street address, city, state, and ZIP code | 5 Employee contributions/Designated Roth contributions or insurance premiums $ | 6 Net unrealized appreciation in employer's securities $ | |
|---|---|---|---|
| PATRICK, WILLIAM S 10543 LUBAO AVENUE CHATSWORTH, CA 91311 | 7 Distribution code(s) [ ] IRA/SEP/SIMPLE [X] | 8 Other $ % | This information is being furnished to the Internal Revenue Service. |
| | 9a Your percentage of total distribution % | 9b Total employee contributions $ | |
| | 1st year of desig. Roth contrib. | 10 State tax withheld $ | 11 State/Payer's state no. CA / | 12 State distribution $ |
| Account number (see instructions) P23-10183CON7 | 13 Local tax withheld $ | 14 Name of locality | 15 Local distribution $ |

Form **1099-R**                      (Keep for your records.)                  Department of the Treasury - Internal Revenue Service

# EXHIBIT·   C

28

# EXHIBIT 22

EXHIBIT _____D_____

WILLIAM G PATRICK
LINCOLN RETIREMENT / CUSTODIAN
10543 LURA AVE
CHATSWORTH CA 91311

020 00001 00
ACCOUNT:                     1805237        PAGE: 1
                                            04/01/2006

IRA CERTIFICATE 1805237

| DESCRIPTION | DEBITS | CREDITS | DATE | BALANCE |
|---|---|---|---|---|
| BALANCE LAST STATEMENT | | | 12/31/05 | 179,704.77 |
| NORMAL DISTRIBUTION | 5,000.00 | | 01/10/06 | 174,704.77 |
| NORMAL DISTRIBUTION | 2,019.72 | | 03/25/06 | 172,805.05 |
| NORMAL DISTRIBUTION | 172,000.00 | | 06/05/06 | 595.05 |
| ROLLOVER CONTRIBUTION | | 172,000.00 | 06/05/06 | 172,595.05 |
| INTEREST ADDED TO PRINCIPAL | | 4,000.00 | 06/12/06 | 176,685.05 |
| NORMAL DISTRIBUTION | | | 07/17/06 | 176,685.05 |
| ROLLOVER CONTRIBUTION | 176,000.00 | | 07/18/06 | 605.05 |
| NORMAL DISTRIBUTION | | 176,000.00 | 07/28/06 | 176,685.05 |
| NORMAL DISTRIBUTION | 176,000.00 | | 08/30/06 | 685.05 |
| INTEREST AT 1.200 % | | 3,195.90 | 09/03/06 | 3,970.93 |
| BALANCE THIS STATEMENT | | | 09/04/06 | 3,810.95 |

– – – – – – – I N T E R E S T – – – – – – –

| | | |
|---|---|---|
| AVERAGE LEDGER BALANCE: | 176,535.35 | INTEREST EARNED: 3,195.90 |
| INTEREST PAID THIS PERIOD: | 3,195.90 | DAYS IN PERIOD: 549 |
| INTEREST PAID 2006: | 3,195.90 | ANNUAL PERCENTAGE YIELD EARNED: 1.20% |
| INTEREST PAID 2005: | 2,043.06 | |

*(handwritten notes, right margin)*

BALANCE @ 12/31/04      195,161.71
2005 Contributions       3,500.00
2005 Interest Income     2,643.06
                      _____
BALANCE BEFORE W/D'S   200,704.77
BALANCE @ 12/31/05    (179,704.77)
                      _____
CALCULATED W/D'S        21,000.00

EXHIBIT

D

30

# EXHIBIT 23

EXHIBIT ___D___

31

Certificate 1805237 - WILLIAM S PATRICK

Account Classification

Warnings

Presentments
No Presentments for Account

All Transactions

| Description | Debits | Credits | Date | Balance |
|---|---|---|---|---|
| Balance Forward: | | | Dec 31, 2005 | $179,704.77 |
| Normal Distribution | $5,000.00 | | Jan 10, 2006 | $174,704.77 |
| Normal Distribution | $2,019.72 | | May 25, 2006 | $172,685.05 |
| Normal Distribution | $172,000.00 | | Jun 05, 2006 | $685.05 |
| Rollover Contribution | | $172,000.00 | Jun 12, 2006 | $172,685.05 |
| INTEREST ADDED TO PRINCIPAL | | $4,000.00 | Jul 17, 2006 | $176,685.05 |
| Normal Distribution | $176,000.00 | | Jul 18, 2006 | $685.05 |
| Rollover Contribution | | $176,000.00 | Jul 24, 2006 | $176,685.05 |
| Normal Distribution | $176,000.00 | | Aug 30, 2006 | $685.05 |
| Interest at 1.2000% | | $3,185.90 | Sep 03, 2006 | $3,870.95 |
| Rollover Contribution | | $176,000.00 | Sep 27, 2006 | $179,870.95 |
| Normal Distribution | $7,000.00 | | Oct 24, 2006 | $172,870.95 |
| Normal Distribution | $7,000.00 | | Mar 01, 2007 | $165,870.95 |
| Normal Distribution | $10,000.00 | | Mar 20, 2007 | $155,870.95 |
| Normal Distribution | $20,000.00 | | Apr 26, 2007 | $135,870.95 |
| Normal Distribution | $15,000.00 | | Jun 06, 2007 | $120,870.95 |
| Transfer From Another Source | | $15,000.00 | Jun 21, 2007 | $135,870.95 |
| Balance This Statement: | | | Jun 25, 2007 | $135,870.95 |

2006 DISTRIBUTIONS:        2006 INTEREST

5,000 00                        4,000.00

2,019.72                        3,185.90

7,000 00                        _____

_____                        7,185.90

14,019.72

# EXHIBIT D

32

1

In Re: William S. Patrick
Chapter 7 Case No. 1:07-bk-10312GM

2

3

PROOF OF SERVICE

4

I, M.SWANSTON declare:

5

I am a citizen of the United States over the age of eighteen years and
not a party to the within action.  My business address is 16633 Ventura
Boulevard, Suite 800, Encino, California 91436

6

7

On June 25, 2008, I  served the following document described as follows:
**FURTHER RESPONSE TO DEBTOR'S JUNE 11, 2008 REPLY TO RESPONSE TO
DECLARATIONS OF DONALD L. FIFE, CPA AND WILLIAM S. PATRICK**

8

9

on interested parties in this action by placing true copies thereof
enclosed in sealed envelopes addressed as follows:

10

SEE ATTACHED SERVICE LIST

11

12

[X (By Mail) I caused such envelope with postage thereon
fully paid to be placed in the United States mail at Encino,
California.

13

14

[ ]readily familiar with the business' practice for the
collection and processing of correspondence for mailing with the  United
States Postal Service and the fact that the correspondence would be
deposited with the United States Postal Service that same day and in the
ordinary course of business; On this  date, the   above referenced
correspondence was placed for
deposit at _____ , California and placed for collection   and
mailing following ordinary business  practices.

15

16

17

[ ] By personal service, I caused such envelope to be served by hand to
the addressee(s) noted on the above service list.

18

[ ]  By facsimile machine, I caused the above-referenced
document(s) to be transmitted to the party(ies) as indicated above. I
caused the copy to be  transmitted from the facsimile machine number of
the Law Offices of  Allan D. Sarver (818) 981-0026.  The transmission
was confirmed  as complete and without error.

19

20

21

[ ] State) I declare under the laws of the State of
California that the foregoing is true and correct.

22

23

[x]Federal) I declare (or certify, verify, state) that the
foregoing is true and correct, and that I am employed in the offices of
a member of the bar of the State of California, who has filed an
Application for Limited admission and Order before this Court. Service
of  process in the manner specified above was done at the direction of a
member of the California bar at whose   direction the service was made.
Executed this 25TH day of JUNE, 2008,at Encino, California
91436.

24

25

26

27

M. SWANSTON, DECLARANT

28

In Re: William S. Patrick
          Chapter 7 Case No. 1:07-bk-10312GM

SERVICE LIST


**DEBTOR'S COUNSEL**
Mark M. Sharf Esq.
Sharf Law Firm
15821 Ventura Blvd Suite 275
Encino, CA 91436

**CHAPTER 7 TRUSTEE**
David Seror Trustee
2029 Century Park East 21st Floor
Los Angeles, CA 90067

**COUNSEL FOR CHAPTER 7 TRUSTEE**
Daniel Gill, Esq.
Law Offices of Ezra/Brutzkus/Gubner LLP
21650 Oxnard Street, Suite 500
Woodland Hills, Ca 91367

**OFFICE OF U.S. TRUSTEE**
U.S. Trustee
21051 Warner Center Lane Suite 115
Woodland Hills, CA 91367

34